THE STATE OF FLORIDA EX REL. JOHN F. HUGHES ET AL., PLAINTIFF, VS. DAVID S. WALKER, CIRCUIT JUDGE, DEFENDANT.

1. A civil case at law cannot be transferred from the Circuit Court in which it is pending to another Circuit Court because of the disqualification of the Judge to try it, except on consent of all the parties to the action. Section 19, Article V, Constitution of 1885.
2. That mandamus is not the proper remedy to compel a Judge of a Circuit Court to which an action has been transferred from another Circuit Court to hear the cause, *quaere?*

This is a case of original jurisdiction.

The facts of the case are stated in the opinion of the court.

*William Fisher,' Blount & Blount and George W. Walker* for Plaintiff.

The respondent bases his refusal to act in these cases upon the language of the Constitution of 1885, Article V, section 19, in which the language is: " The parties may, however, transfer the cause to another Circuit * * Court," &c.

The language does not necessarily mean that both parties must agree to a transfer. It may very readily mean that the parties on both sides may have the right to transfer, to be exercised by either as the occasion may arise.

    *     *     *     *     *     *     *

It is used here in contradistinction to the Court, or the Governor as indicating a remedy, when the Judge is disqualified, accessible without a resort to the Court, or the Governor.

    *     *     *     *     *     *     *

It was evidently not intended to introduce into the laws of Florida a new system of transfers, or abridge the system

already existing, but merely to negative the idea that the right to choose a judge *ad litem*, was the only remedy to the parties when the judge was disqualified. This is clearly indicated by the existence of the clause at all, when the right to transfer and a reference already existed, and by the words " may, however," and the clause is a clear reservation of existing rights—relating to a thing *in esse.* Smith's Commentaries, p. 711.

\* \* \* \* \* \* \*

The old law is to be considered in construing the Constitution. People vs. Potter, 47 N. Y., 375 ; ib. vs. Smith, ib., 330.

The laws of 1851 (Chap. 373) provides for a transfer by either party, and the Constitution in speaking in such a meagre way of transfers, must be intended to refer to the then existing law. And it follows logically that the method of transfer pointed out by the statute, is the method intended by the Constitution unless an intention to alter this method is apparent upon the face of the Constitution.

\* \* \* \* \* \* \*

Particularly would this be so when it is apparent that the clause was not intended to embody any reform in the method, but merely to limit a supposed implication from the first clause that, in case of disqualification of a judge, remedies other than that provided in the first clause would be excluded. A construction requiring the assent of both parties to a removal would narrow the remedy, when it seems to be very clear that the clause is a conservative instead of a radical one. To place it in the hands of either party to bar an escape from the inconvenience and sometimes ruin of the disqualification of a judge would be indeed a radical move, for which no adequate reason is apparent.

\* \* \* \* \* \* \*

In construction of constitutions as of statutes the evil to

be remedied is to be inquired after. Cooley's Constitutional Limitations, (65), and if it be clear that there was no evil to be remedied and it be doubtful whether the Constitution framers intended to make a change, it will be held that no change was intended. A public mischief would be wrought and a construction which would produce this result will be avoided, if possible. People vs. Smith, 47 N. Y., 330.

The section of the Constitution under consideration applies only to suits at law. If under this section both parties must agree to a transfer, of a case at law, then we have one method for common law and one for chancery, for under the statute either party may remove a case in chancery. There is no reason apparent for this difference and in the absence of a reason, the courts will hold that there was an absence of intention.

\* \* \* \* \* \* \*

The argument of convenience to be subserved by a transfer or want of it is not of much weight *pro or con*, but such weight as it has is in favor of relator, without the right of transfer by application to the court, he is practically remediless in most cases. The concurrence of the other party is necessary to the selection of a Judge *ad litem* or a referee, and his case can never be tried unless a Judge be transferred from one Circuit to another. Most of the courts in the several Circuits sit at the same time, and the Governor in every case requires a showing of the importance of the exchange before making the order, and if there be but one or two cases in which the local Judge is disqualified, the order will not be made. But the litigation of each party is as important to him, if his be the only case, as if there be a score similarly circumstanced.

\* \* \* \* \* \* \*

The statement in answer that the same language is used

in Section 19, Article V, with reference to Judges *ad litem* and referees, as to transfers is inexact. The language used, referring to Judges *ad litem*, is that the "parties *may agree*." This is explicit, but no such language is used with reference to referees transfers. The language was properly explicit in the first instance because a new right or remedy was being created, but in the latter the language was general because referring to existing rights, and must be controlled by the then state of those rights.

    \*        \*        \*        \*        \*        \*        \*

Nor pursuing the same argument, it is not conclusive or even strongly persuasive, that the same language is used with reference to tranfers and referees, although (as we contend) in the former cases either party might procure a transfer and in the latter both must agree in the selection of a referee. The language of constitutions is necessarily general and the same word is frequently given a different meaning when applied to different subject matters. Smith's Commentaries, p. 631, sec. 485. And in this case it can very readily be held that the word "parties" means both parties when a temporary judicial officer for the settlement of the litigation is to be created by private persons, and that it means either party when the reference is to be a right of resort to judicial officers already created by the State for the purpose of settling controversies between individuals.

    \*        \*        \*        \*        \*        \*        \*

The following cases state rules of construction which are as applicable to constructions of constitutions as of statutes and which may assist us in finding the true meaning of this section 19. State vs. Garthwaite, 23 N. J. L., 143; Taylor vs. Delaney, 2 Caines' Cas., 151; Nobles vs. State, 1 Green (Ia.), 325 ; Sibley vs. Smith, 2 Mich., 486. Not verified : McDougald vs. Dougherty, 14 Geo., 374; Brevard, 296; Mitchell vs. Mitchell, 1 Gill, 66.

*John W. Malone* for defendant.

RANEY, C. J.: This is an original proceeding by mandamus.

The facts stated in the alternative writ are as follows: The relators brought ejectment in the Circuit Court of Washington county, in the First Judicial Circuit, against Alexander Alexander, and the judge of that circuit being disqualified to hear and determine it, made an order, upon petition of the relators, in November, 1888, transferring it to the Circuit Court of Leon county, in the Second Judicial Circuit, and the papers in the case were thereupon transferred by the clerk of Washington county to the clerk of the Leon county Circuit Court, and the cause docketed in the latter court. Subsequent to this transfer Alexander, by his attorneys, "filed in the office of the clerk of the Leon County Circuit Court, interrogatories to take depositions of certain witnesses in his behalf, and caused commissions to take such depositions, and the judge of said Leon County Circuit Court to order said depositions to be opened, and at the Fall Term, 1888, of said Leon County Circuit Court, negotiated with the attorneys of the petitioners for the pur·pose of agreeing upon and fixing a day for the trial of said cause at said term of the court," but the court continued the cause to the next term thereof. Notwithstanding the transfer and the acts of Alexander's attorneys mentioned above, Alexander, by his attorneys moved the Leon County Circuit Court, at its Spring Term, 1889, to direct its clerk to return the papers therein to the clerk of the Circuit Court of Washington county, and to strike the cause from its docket, the ground of this motion being that under the Constitution of this State, a cause in which a Circuit Judge is disqualified can be transferred only by all the parties to said cause, and not, as in the case in question, by one side

alone. The respondent, the Circuit Judge of the Second Circuit, has signified to the attorneys of Hughes and others, who are both plaintiffs in ejectment and relators, his intention to grant the motion of Alexander and strike the cause from the docket and refuse to proceed with the trial of the cause at the Spring Term of Leon Circuit Court, stated by the alternative writ to be in session, solely upon the ground that Alexander did not co-operate in the transfer, or assent thereto, and that a valid transfer could not be made without such co-operation or assent.

The command of the writ is that the judge of the Second Circuit, sitting in and for Leon county, proceed to try the cause, or show cause why he refuses to do so.

The return of the Circuit Judge is that Alexander did not consent to the transfer of the ejectment cause, but on the contrary, objected thereto and put on record his exception to the ruling of the Judge of the First Circuit ordering the transfer; and further, that a transfer of a civil cause at law can, in view of the provision of the nineteenth section of the Judiciary (or 5th) Article of the Constitution, be made only by all the parties to it, or with their consent, and not by, or on the application of some, or less than all of the parties.

This return is demurred to on the ground that it is not necessary under the Constitution and laws of the State that both or all parties to a civil action at law shall consent to a transfer of the cause from one Circuit to another.

By the 19th section of the original statute, organizing the Circuit Courts of this State, approved July 22d, 1845, (Chapter 4, Laws of Florida,) it was enacted that a Judge should not try a cause in which he may have been employed as counsel, but that he should continue the cause until some Judge, who was not so employed at the time of his election, should hold the court. At this time the Circuit Judges ro-

tated, and the statute (section 6) provided that no Judge could preside oftener than once in two years in the same Circuit, except in the case of sickness or death specified therein.

On January 4th, 1848, an act (Chapter 136) amending the one mentioned above, was approved. It provided that whenever it should appear to any Judge of the Circuit Court that any case or cases wherein he was interested or had been counsel, or which for any cause, he could not properly hear, try or decide, such Judge should notify the Supreme Court of the fact at its next term, and thereupon it should be the duty of the latter court to appoint and assign one of the Judges thereof not interested or disqualified to hold the next regular term of the Circuit Court in the county or counties wherein such case or cases were pending, or to hold a special term for their trial at such time or times as the Supreme Court might direct.

From the institution of the State Government in 1845, until early in January, 1851, the powers of the Supreme Court, it may be remarked, were vested in and its duties performed by the Judges of the several Circuit Courts. Section 3, Article V, Constitution of 1838; Chapter 371, approved January 11th, 1851, and chapter 372, approved January 24th, 1851, pp. 121, 123, Laws of 1850.

The next legislation upon the subject of the trial of causes in which a Circuit Judge was disqualified was Chapter 373: "An act to provide for the more effectual administration of justice in the courts of this State," approved January 24th, 1851. The first section of this statute provides (section 23, p. 336, McC.'s Dig.,) that whenever any cause is pending in a Circuit Court, and cannot be heard, tried or determined by reason of the disqualification of the Judge to hear and determine the same, it shall be lawful for either party thereto to present his petition to such Judge praying that the cause

be transferred to some other Circuit, and it shall be the duty of the Judge so disqualified to have said cause removed to some court in the next nearest Circuit, or to some other Circuit, if the Judge of the nearest one be disqualified also.

The fifth section of this act provides that whenever it should be made satisfactorily to appear to the Governor of the State that from the number or character of causes pending, or the number of witnesses to be examined, or from other cause it would be unjust or greatly inconvenient to transfer such suit or suits to another Circuit in consequence of the Judge of the proper Circuit to try said suit or suits, or to direct an interchange of Circuits for the time being between the Judge so disqualified and some other Judge competent to try and determine said causes. See Laws of Florida, A. D. 1850, p. 124.

The Constitution of 1868, section 7, of the Judiciary Article, provided that the Chief-Justice of the Supreme Court may in his discretion order a temporary exchange of Circuits by the respective Judges, or any Judge to hold one or more terms in any other Circuit than that to which he is assigned, and thereby by implication repealed the fifth section of the act of 1851, chapter 373.

In the Constitution of 1885, we find the following provisions :

The Governor may, in his discretion, order a temporary exchange of circuits by the respective Judges, or order any Judge to hold one or more terms or parts of terms in any other circuit than that to which he is assigned. Section 8, Article V, Judiciary Department.

When any civil case at law in which the Judge is disqualified, shall be called for trial in a Circuit or County Court, the parties may agree upon an attorney at law, who shall be Judge *ad litem*, and shall preside over the trial of or make orders in said cause as if he were Judge of the Court. The

parties may, however, transfer the cause to another Circuit Court, or County Court, as the case may be, or may have the case submitted to a referee.   Section 19, Article V.

Any civil cause may be tried before a practicing attorney as referee, upon the application of the parties and an order from the Court in whose jurisdiction the case may be, including the evidence taken, and such record shall be filed with the papers in the case in the office of the clerk, and the cause shall be subject to an appeal in the manner prescribed by law.   Section 20, Article V.   This section is in substance the same, and almost a literal retention of section 17 of Article VI of the Constitution of 1868.

All laws now in force not inconsistent with this constitution shall continue in force until they shall expire by their own limitation, or be repealed by the Legislature.   Section 2, of Article XVIII, " The Schedule."

The Legislature of 1887 passed an act, (chapter 3713, approved June 3,) providing that when from any cause the Judge of the Circuit or County Court is disqualified from presiding in any civil cause, the parties may agree upon an attorney at law, which agreement shall be entered upon the record of said cause, who shall be Judge *ad litem* and shall preside over the trial of and make orders in the cause as if he were the Judge of the Court.   The statute also declares that nothing therein shall prevent the parties from transferring the cause to another Circuit or County Court, as the case may be, or from having the case submitted to a referee.

The meaning of the word " parties," in the second sentence of section 19, Article V, of the Constitution, set out above, is according to the natural signification of the term : all the parties to any civil case at law.   This is the signification of the same word in the preceding sentence of the section, and there is nothing in the entire section or its subject-matter suggest-

ing a different meaning. Considering this section with reference to the legislation existing on the subject of the trial of civil causes in which the Judge of the Circuit Court in which they were pending should be disqualified, we think the section shows a clear intention to modify such legislation. That legislation, the act of January 14th, 1851, chapter 373, *supra*, gave the right to " either party " to any civil cause to obtain a transfer by filing a petition setting up the disqualification of the Circuit Judge and other necessary allegations and by otherwise complying with the statute. The provision of the section of the constitution is that " the parties " to the case, instead of agreeing upon an attorney as a judge *ad litem* to try the cause, may transfer the cause to another Circuit Court or submit it to a referee. It means the same parties who might agree upon the judge *ad litem*, and none other, and is repugnant to the idea that less than all or that " either of " such parties could transfer the cause or submit it to a referee for trial. The framers of the constitution cannot be denied knowledge of the statutory provision and had it been their intention to leave that provision intact they would not, when dealing with the specific subject, have used language inconsistent with the retention of such a right by either party to any civil cause. The language of the constitution is clearly inconsistent with the continuance in a civil cause at law of the right of transfer which its framers found " either party " thereto enjoying, and there is nothing indicating any purpose upon the part of the convention or the people inconsistent with a modification of this privilege. Reading the old law and the constitution together the only reasonable deduction in our judgment is that a modification of the former in this particular class of cases was intended.

It is true that the interpretation we make of the constitution results in there being one method for the transfer of civil causes at law, and another for chancery causes, but we

do not think there is an absence of reason for this difference. Law causes are tried usually by a jury, and in them ordinarily witnesses are examined orally before the jury. We think the purpose in making the modification in point was to secure to parties a trial where the suit is brought, *i. e.*, the county in which the cause of action arose, or where the defendant resides—and where ordinarily the witnesses reside and are known by the jurors, to say nothing of the expense and inconvenience usually attending the transfer of a common law case. Proffatt on Jury Trials section 80 ; 5 Ga. Reports, p. 205. None of these considerations attach to the transfer of cases in equity, and for these, if not for other reasons, it is evident the convention did not even provide for their trial by a judge *ad litem.*

The meaning of the constitution is that no case at law shall be transferred on account of the disqualification of the resident Circuit Judge to determine it, except upon consent of all the parties to it, and that it shall not be tried before a judge *ad litem* or referee without such consent. Where the parties do not consent to a transfer or agree upon a judge *ad litem* or submit to a referee, the constitution contemplates that the trial shall be before one of the regular Circuit Judges, whom the Governor may, under section 8 of Article V, order to exchange circuits with the resident judge, or to hold a term or a part of a term in the county where the cause is pending. If one or more of the parties to a cause shall be found unreasonable and obstructive as to the remedies given to parties as a whole, it is not to be presumed that the Governor will fail to use his discretion under the last mentioned section of the constitution in such manner as will secure a reasonably prompt trial to the party or parties desiring it.

The authorities relied upon by counsel for relators do not conflict with the conclusions announced above. They are

Smith's Commentaries, p. 711, 631, 485 ; People vs. Potter, 47 N. Y., 375; People vs. Smith, Ib., 330; Cooley's Con. Lim., 65 ; State vs. Garthwaite, 23, N. J. Law, 143; Taylor vs. Delaney, 2 Caines' Cases, 151; Nobles vs. State, 1 Green (Iowa), 325; Sibley vs. Smith, 2 Mich., 486; McDougall vs. Dougherty, 14 Ga., 674; Mitchell vs. Mitchell, 1 Gill, 66.

After an experience of nearly thirty-six years, under the act of 1851, the people have adopted a system in law cases more like that which preceded this act.

According to the pleadings in this proceeding the record in the action of ejectment shows affirmatively that the defendant therein did not consent to the transfer, but objected to a transfer being made, and excepted to the order of transfer. This being so, the order should not have been made and did not confer jurisdiction on the Circuit Court of Leon county. Swepson et al. vs. Call & Baker, 13 Fla., 337

Assuming that the parties may by participating without objection in a trial in the court to which a case has been improperly transferred, cure a defect in the transfer proceedings and estop themselves from denying the jurisdiction, or thereby, or otherwise, confer jurisdiction on the court, we do not think the continuance of the cause at the Fall Term of Leon Circuit Court, or taking out a commission for depositions, and obtaining an order for opening depositions, and the negotiations with counsel as to a trial, constitute a waiver of his objections and exceptions. Harkness vs. Hyde, 98 U. S., 476. Having objected to the jurisdiction of the Leon Circuit Court by his motion therein to remand the cause, we do not think the acts preparatory to trial, all of which prudence may have dictated, he should have taken in view of the possibility of a ruling by the judge of the Second Circuit in favor of his jurisdiction, conferred jurisdiction on the Leon Court, or estopped the defendant in

ejectment from denying its jurisdiction. Had the motion to remand been denied, and the cause proceeded to trial, we do not think the objection and exception to the order of transfer would have been waived or lost.

Upon the case now before us the Circuit Court of Washington county has not been divested of its jurisdiction of the action of ejectment, and the papers therein should be returned to it.

II. It has been suggested in a brief filed in the case that this is not a proper case for mandamus. The objection is based on High's Extra. Legal Remedies, section 252, citing State vs. Smith, 19 Wis., 531. In State *ex rel.* vs. Van Ness, Circuit Judge, 15 Fla., 317, the decision was: where a judge has determined that under the statutes of this State he is disqualified to hear a cause, mandamus will not lie to make him reverse his decision and hear the cause. What would be the remedy is not stated. In Railway Company vs. Wiswall, 23 Wall. 507, the order of the Circuit Court of the United States remanding, for want of jurisdiction to hear it, a case removed into it from a State court, was held not to be a final judgment which authorized a writ of error and the writ of error was dismissed, the Supreme Court of the United States remarking that the remedy in such a case is by mandamus to compel action and not by writ of error to review what has been done; and citing King vs. Justices, 1 B. & A., 1 ; 1st Chitty's General Practice, 736 ; Ex-parte Bradstreet, 7 Peters, 647 ; Ex-parte Newman, 14 Wall., 165. See also Ex-parte Hoard, 105 U. S., 578 ; Insurance Company vs. Comstock, 16 Wall., 258.

We are not prepared to say that mandamus would not be the proper remedy to compel the respondent to proceed to the trial of this cause had it been properly transferred to his court, but as we understand the point not to be insisted upon in this particular case, we have disposed of the cause

without reference to this question of practice, which can be more fully considered when it shall arise and be insisted upon. The importance to litigants of a decision. of the constitutional question involved, the conclusion reached by us as to it, and the fact that no exception was taken by the respondent to the remedy have also influenced us to pursue this course.

The demurrer is overruled.