THE STATE OF FLORIDA, EX REL. RUSSELL E. COLCORD, PLAINTIFF, VS. WILLIAM B. YOUNG, CIRCUIT JUDGE, DEFENDANT.

1. Where a judge has decided that he is disqualified to hear a case, and has made an order refusing to hear the same on that account, mandamus is the proper remedy to require him to hear it, if it be that he is not disqualified to do so. State vs. Van Ness, 15 Fla., 317, reversed.

2. A circuit judge who is a member of the vestry of a church, whose wardens and vestrymen have been incorporated, and by the terms of the incorporating act are invested with all property, including gifts, donations and grants, to hold the same for the benefit and behoof of the church, with power to sue and use all necessary measures for recovering and defending any and all property which the church may claim or demand, is disqualified, by interest, to sit in a cause involving the probate of a will, in which will the rector, wardens and vestry of the church are beneficiaries; such rector, wardens and vestrymen, claiming corporate powers under the stated statute, and being a party to the cause.

Mandamus by the State on the relation of Russell E. Colcord, by his next friend, John L. Colcord, against William B. Young, circuit judge, to compel defendant to determine a cause appealed from the county court to the Circuit Court. Judgment for defendant.

*Fletcher & Wurts* for Relator.

RANEY, C. J. :

The petition, which by consent stands as the alternative writ of mandamus in this proceeding, shows that on the 23d day of June last, Russell E. Colcord, by his next friend, John L. Colcord, and the rector, wardens and vestry of St. John's Episcopal Church, of Jacksonville, propounded for probate before the county judge of Duval county, sitting in the exercise of his probate jurisdiction, a written instrument purporting to be the last will and testament of one Amanda L. Colcord, in which alleged last will and testament, the rector, wardens and vestry of St. John's Church, Jacksonville, a religious corporation is named as beneficiary. The county judge refused to admit the instrument to probate, and entered an order to that effect. From this order the relators appealed to the Circuit Court of the fourth circuit sitting in and for Duval county; and afterwards upon the cause coming on to be heard, the defendant herein, the judge of that circuit, refused to hear the same, on the ground indicated by the following order, which he then and

there made : "This cause coming on to be heard this 10th day of January, 1893, and it appearing that the rector and vestry of St. John's Church, a corporation, is a party interested, and the presiding judge of this court being a member of the said vestry, the said judge declines to proceed with the hearing on the ground that he is disqualified." It is also alleged in the petition that the said rector, wardens and vestry of St. John's Church, Jacksonville, is a religious corporation, and that Judge Young has no beneficial interest under said alleged will and testament. The prayer is for a mandamus requiring the judge to take jurisdiction and determine the matter involved in said appeal. Judge Young has appeared, admitted the truth of the allegations of the petition, and submitted the question of his disqualification to us for its decision.

The first point suggested by the relator's brief is as to the remedy, and in this connection the decision of this court in State vs. Van Ness, 15 Fla., 317, is called to our attention and questioned. In it Judge Van Ness set up in his return to the writ of mandamus that he had held himself incompetent to sit in the cause in which it was sought to compel him to act, because the Pensacola & Louisville Railroad Company was a party, and that stock in the company was owned by W. A. Richardson and W. B. Belknap, the former of whom, and the wife of the latter, were cousins of the judge's wife. It was admitted by the relator in its application for the writ, that Richardson

was a stockholder, but denied that Belknap was. Neither Richardson nor Belknap were parties to the cause in the Circuit Court. These facts are shown by the original files in the case, which we have examined. The conclusion reached by this court was that mandamus did not lie; the reasoning of the opinion being that the only duty the judge had to perform was the exercise of his judicial discretion and judgment in the matter of determining his qualification, and that the writ did not lie to make him reverse that decision, even though it was wrong.

The judgment we have formed is that the conclusion reached in the above case as to the remedy is erroneous. No authorities are cited in it. The opposite conclusion had been adjudged in *Ex parte* Henderson, 6 Fla., 279, and Anderson vs. Brown, *Id.*, 299, where it was held that mandamus would lie from this court to the Circuit Court in case of its refusal to entertain jurisdiction when directed by law. The Circuit Court had refused to in the former case entertain an appeal taken from a judgment of a justice of the peace, the Circuit Court holding that it did not have the appellate jurisdiction, yet mandamus was awarded to require it to hear the appeal; while in the latter case an appeal was taken to this court from the order of the Circuit Court dismissing the appeal from the justice's judgment.

Whenever a circuit judge refuses to exercise jurisdiction in a cause of which he has jurisdiction, and should exercise it, mandamus is a proper remedy, at

least in the absence of a remedy by appeal or writ of error, to require the exercise of jurisdiction. 1 Chitty Gen. Pr. 796, 797; King vs. Justices, 1 Barn. & Adol., 1; Rex vs. Inhabitants of Glamorganshire, 12 Mod., 403. A decision by a court or judge, that it or he has not jurisdiction of a cause, is not the exercise of his judicial judgment as to anything involved in the cause, and hence it does not fall within that class of cases to which the rule that mandamus does not obtain to control judicial discretion applies. Cowan. vs. Fulton, 23 Grat., 579.

In *Ex parte* Bradstreet, 7 Pet., 634, where a United States District Court dismissed certain writs of right because the declarations did not show that the value of the land involved exceeded $2,000, the Supreme Court of the United States awarded a writ of mandamus to require the former court to reinstate the causes, and proceed to try them, it being the practice to allow the jurisdictional value to be given in evidence, though not stated in the declaration. In Railroad Co. vs. Wiswall, 23 Wall., 507, it was decided that an order of a Circuit Court of the United States remanding a cause to a state court for want of jurisdiction to decide it was not a final judgment, in the sense which authorizes a writ of error, and that the remedy of the party against whose will the action had been commenced was by mandamus to compel action, and not writ of error to reverse what had been done. See also Insurance Co. vs. Comstock, 16 Wall., 258. The same court in *Ex parte* Parker, 120 U. S., 737, 7

Sup. Ct. Rep., 767, reaffirming the principle that mandamus properly lies in cases where the inferior court refuses to take jurisdiction where by law it ought to do so, or where having obtained jurisdiction in a cause, it refuses to proceed in the due exercise thereof, but that it will not lie to correct alleged errors occurring in the exercise of its judicial discretion while acting within its jurisdiction, awarded a writ of mandamus to the Supreme Court of Washington Territory to make it reinstate upon its docket an appeal which had been taken in compliance with law, and which that court had dismissed. The grounds of the motion to dismiss were that all the co-partners had not joined in the appeal, or been served with notice of appeal, and because the evidence was not properly certified. The territorial court had held that the grounds were well taken, and thereupon, for want of jurisdiction to hear and determine the cause upon its merits, had dismissed the appeal. In the case of Parker, 131 U. S., 221, 9 Sup. Ct. Rep., 708, an appeal from an inferior court had been dismissed by the same territorial Supreme Court on the ground that no notice was given to parties of the application to the inferior judge for the appeal, and, further, that the judge could not entertain the application beyond the limits of his dictrict. The Supreme Court of the United States held that no such notice was required by the law regulating the appeal, and that the judge could act in the matter beyond his district; and, the

appeal having been taken in compliance with law, a mandamus was issued for the reinstatement and hearing of the appeal.

In Cavanaugh vs. Wright, 2 Nev., 166, a mandamus issued to require a district court to try *de novo* an appeal which the district judge thought could only be tried as upon writ of error. In Floral Springs Water Co. vs. Rives, 14 Nev., 431, there had been judgment before a justice of the peace in favor of the company, against a county, and the county having appealed to the district court the judge of the latter court refused to hear the appeal, on the ground that a justice of the peace had no jurisdiction of an action against a county; but the Supreme Court of that state held that justices had such jurisdiction, and awarded a mandamus requiring that the appeal be heard. In Cowan vs. Fulton, 23 Grat., 579, where a circuit judge refused to hear certain causes which had been transferred to his court, he holding that the statute directing the transfer was unconstitutional, a mandamus issued, directing him to reinstate and hear them; and in answer to the contention that orders striking the causes from the docket for want of jurisdiction could not be reversed by mandamus, it was decided such orders were not judgments in the causes, but simply refusals to hear and decide the cases. Kent vs. Dickinson, 25 Grat., 817, is to the same effect.

The following cases, like those above, also illustrate the appropriateness and efficacy of this writ where there is a refusal to exercise lawful jurisdiction: *Ex parte* Dickson, 64 Ala., 188; Steele vs. County Coms.,

83 Ala., 304, 3 South. Rep., 761 ; Beguhl vs. Swan, 39 Cal., 411 ; Temple vs. Superior Court, 70 Cal., 211, 11 Pac. Rep., 699 ; State vs. Laughlin, 75 Mo., 358 ; Territory vs. Judge of District Court, 5 Dak., 275, 38 N. W. Rep., 439. And the line of distinction between the class to which they belong, and the following, and others which might be cited, where it is sought to correct alleged errors in the decision of causes of which jurisdiction has been taken, becomes apparent on reasonably careful consideration : *Ex parte* Newman, 14 Wall., 162; *Ex parte* Railway Co., 103 U. S., 794; *Ex parte* Gordon, 104 U. S., 515 ; *Ex parte* Hoard, 105 U. S., 578; *Ex parte* Baltimore & O. R. Co., 108 U. S., 566, 2 Sup. Ct. Rep., 876; *Ex parte* Morgan, 114 U. S., 174, 5 Sup. Ct. Rep., 825 ; *Ex parte* Brown, 116 U. S., 401, 6 Sup. Ct. Rep., 387; *In re* Sherman, 124 U. S., 364, 8 Sup. Ct. Rep., 505. In so far as the case of People vs. Garnett, 130 Ill., 340, 23 N. E. Rep, 331, conflicts with the authorities relied on by us in reaching our conclusion, we prefer the latter.

If the respondent, Judge Young, is disqualified by the facts stated to hear the appeal, any decision he might make in the case would be of "no force or validity," but "null and void." Section 970, Rev. St. If so disqualified, he has no power or jurisdiction to hear the case. Sections 967, 969, 970, Rev. St. On the contrary, if he is not disqualified by the circumstances alleged, it is his duty to hear the appeal, and exercise his ordinary judicial functions in the cause, and it is the right of the relator to have him do so.

State of Florida ex rel. v. Wm. B. Young, Judge.—Opinion of Court.

In so far as the application or appropriateness of the remedy by mandamus is concerned, or the right of the parties to it, we can see no material distinction between this case and that of one where the question was as to the jurisdiction of the court on any of the grounds presented in the cases cited above. The exercise of judicial power is invoked here no less than in any of those cases, and we can and must decide here whether or not that power lawfully exists; and if it does not we will deny the remedy asked, whereas we will grant the remedy if the power does exist. No decision has been made of any point involved in the pleadings, nor is any asked. The theory and purpose of the relator are to require the defendant to proceed in this matter as one properly cognizable by him, but as to which, from an alleged mistaken view of the law as to his power, he has refused to act. Should we grant the writ, we will say to him that he has authority to act upon the case as to which he has refused to act, and must do so; and in doing this we, of course, would not review any decision of his in the case, and for two reasons, one of which is that he has never acted or made any decision in the case, and the other, that mandamus is not the remedy for reviewing judicial judgments in causes of which jurisdiction is taken. King vs. Justices of Kent, 14 East, 395.

The fact that the question of jurisdiction may be raised on appeal from the judgment of the court on the merits does not preclude the remedy by mandam-

us. Railroad Co. vs. Koontz, 104 U. S. 5, and author-- ities relied on *supra*. It is not a sufficient or adequate remedy. Ray vs. Wilson, 29 Fla., 342, 10 South. Rep., 613.

In State vs. Walker, 25 Fla., 561, 6 South. Rep., 169, there is an intimation of the correctness of the conclusions reached.

II. The incorporation of churches of the Protestant Episcopal faith, as well as those of other denomina-- tions, was begun early in the history of the territory, after its acquisition by the United States ; the first in- stance here of an incorporating statute relating to the Episcopal Church being one approved July 2, 1823, and entitled "An act to incorporate the Protestant Episcopal Congregation of the city of St. Augustine." By it the then incumbent wardens, two in number, and five vestrymen, whose several names are given, and their successors in office, were made a body corporate of the name and style of "The Churchwardens and Vestrymen of the Episcopal Church in St. Augustine called 'Trinity Church.'"

On the 23d day of February, 1839, "An act to in- corporate the Protestant Episcopal Church at Jackson- ville" was approved, and by it William J. Mills, Samuel L. Burritt, and Robert L. Bigelow, wardens, and Harrison R. Blanchard, and such others as were elected vestrymen of the Episcopal Congregation at Jacksonville, and their successors in office, were de—

clared to be a body corporate by the name and style of "The Churchwardens and Vestrymen of St. John's Church at Jacksonville;" and it provided that "the said churchwardens and vestrymen, and their successors in office, shall be invested with all manner of property, real, personal, and mixed, including all moneys due or to become due, donations, gifts, grants, hereditaments, privileges and immunities, which may now or at any time hereafter belong to said church, and also all moneys that have been, or that may hereafter be, subscribed, given, granted, or conveyed for building a church for said congregation at Jacksonville, to hold the same for the proper use, benefit, and behoof of said church; and the said churchwardens and vestrymen, and their successors in office, shall be, and they are hereby declared to be capable of suing and being sued, and of using all necessary measures for recovering or defending any and all property whatsoever which the said church may at any time hold, claim, or demand, and is herein secured, or otherwise; and also with powers to make all necessary rules and regulations for the temporal government of said church, and to recover in the name of the said church, or otherwise, as well the said moneys as other property, with all rents, issues, and profits of the same, or any lands, moneys or other estate belonging thereto, or any part or parcel thereof." The act also provides for the annual election of wardens and vestrymen on

the first Monday in Easter week, or as soon thereafter as may be, by the "wardens, vestrymen and congregation," and that the wardens and vestrymen, or a majority of them, shall have power to fill vacancies. It also limits the value of the holdings of the corporation to $50,000.

It is upon this act, we understand, that the St. John's Episcopal Church at Jacksonville, of which Judge Young is a vestryman, rests its claim as a distinct body to corporate franchises. We find no other statute under which on this record we can take judicial knowledge of its incorporation as a separate legal entity as distinct from its membership of "Protestant Episcopal Church in the Diocese of Florida," as incorporated by the act of February 1, 1881, (Chapter 3352), amending that of February 10, 1838. Such being the case presented to us, we perceive no reasonable ground for questioning the action of the judge in holding himself to be disqualified under our statute, which provides that no judge of any court shall sit or preside in any cause to which he is a party, or in which he is interested, or in which he would be excluded from being a juror by reason of interest, consanguinity, or affinity to either of the parties. Section 967, Rev. St. We are entirely satisfied that a stockholder in a private corporation is disqualified by interest to sit as a judge in a cause to which the company is a party, though he himself is not named on the record. Insurance Co. vs. Price, 1 Hopk., Ch., 1;

Gregory vs. Railroad Co., 4 Ohio St., 675; Dimes vs. Grand Junction Canal, 3 H. L. Cas., 759; 12 Amer. & Eng. Enc. Law, 46, 47; Railroad Co. vs. Howard, 20 Mich., 18. The decision in Trustees vs. Bailey, 10 Fla., 213, does not conflict with this general principle, and hence it is unnecessary for us to say more of that case here.

Through the force and effect of this act the corporate franchise granted by it attaches to the churchwardens and vestrymen. In fact there can be no corporate body, nor can it have any right or powers as such, without them. The purpose of the act is that the wardens and vestrymen, in the corporate capacity which the statute attaches to them, shall, as they are chosen and installed, be invested with the property, and have, exercise and perform the powers and functions indicated by the statute. The particular end in view was continued succession, and thereby an avoidance of the inconveniences incident to frequent changes in the personality of the wardens and vestrymen. That they exercised these functions and powers in a corporate capacity, which the law attaches to them, instead of as mere individuals, does not lessen their interest in the property which they may hold, nor in the property rights which they represent. These interests are certainly property interests, both as to the wardens and vestrymen in their corporate capacity, and as to the church or congregation as the *cestui que trust*; and they are none the less so as to the former body because they hold them in trust for

the congregation, or for the use, benefit, and behoof of the church. That the interest may not be beneficial pecuniarily to the individual wardens or vestrymen does not make it any the less a property interest. If the corporate power given by this act can be exercised in the name of "the Rector, Wardens, and Vestrymen of St. John's Church, Jacksonville," then Judge Young is disqualified to sit in a cause in which he and others claiming the right to exercise the franchise conferred by the statute in question, are seeking to have an instrument probated as a last will and testament that makes a donation to the body corporate created by that act, and for the purpose of securing the property donated.

Whether or not a vestrymen can sit as judge or juror in a case in which the right of his church to property is involved, independent of any statute defining his powers and duties, we are not called upon to decide. Cleage vs. Hyden, 6 Heisk., 73. Nor do we consider the effect of the variance between the corporate name presented by the pleadings, and that to be found in the act of 1839. We decide the questions presented, and nothing more.

Judgment will be entered in favor of the defendant.