# DECISIONS

## OF THE

# Supreme Court of Florida

## JANUARY TERM, A. D. 1923.

DAVID SOMMERS, W. R. HAUZE, CHAS. B. DUFFY, J. H. TRUMP AND FANCIE V. BEVERLY, EXECUTRIX OF THE ESTATE OF B. H. BEVERLY, DECEASED, *Appellants*, v. APALACHICOLA NORTHERN RAILROAD COMPANY, ILLINOIS STATE TRUST COMPANY, THE FLORIDA COMPANY, ST. JOSEPH LAND AND DEVELOPMENT COMPANY, EDWARDS WHITTAKER, XENOPHON P. WILFLEY, R. H. HEMPHILL AND E. A. FAULHARER, *Appellees.*

Opinion Filed December 15, 1922.

Petition for Rehearing Denied April 21, 1923.

1. Where both complainant and defendant have proceeded in the circuit court upon the assumption that a certificate of disqualification of the judge of the circuit court in which the litigation is pending is sufficient in substance to show disqualification, and upon this theory each of the parties has, at different times, submitted the case to other circuit judges upon applications for interlocutory orders, both, or either of them, will thereafter be estopped upon final hearing of the case, coming on for hearing before the judge of another circuit, to deny the sufficiency of the certificate of disqualification.

2. Circuit courts sitting in chancery are always open for "passing interlocutory and final decrees and orders. And all action in said matters in vacation shall have the same force and effect as if done in term time."

3. A circuit judge, acting for another circuit court or judge who is disqualified, has jurisdiction in chancery cases to "hear and determine all such matters as may be submitted to him; and such judge may discharge such duties either in his own or any other jurisdiction, and shall be substituted in all respects in the place (and stead) in the matter aforesaid, of the judge unable or disqualified to act."

4. Where in a chancery cause the judge of the circuit court in which the same is pending is disqualified, the cause may be heard and determined by the judge of another circuit upon application by either party, "and such judge may discharge such duties either in his own or any other jurisdiction," and such hearing does not require nor amount to a change of venue from one jurisdiction to another. Nothing in the statute requires the parties to agree upon a judge to hear the cause, nor that it shall be submitted to the judge of the circuit next adjoining the circuit in which it is pending.

5. A circuit judge acting in a "chancery cause" in lieu of a disqualified circuit judge, does so by virtue of the extra territorial jurisdiction possessed by him under the constitution and the statutes.

6. Fraud is not to be presumed, but must be proved. This is the general rule, as well in equity as at law.

7. All parties *sui juris* are free to make whatever contracts they may choose so long as no fraud or deception is practiced and there is no infraction of law. The fact that one of the parties to a contract made a hard bargain will not alone avoid the contract.

8. Where stockholders of a corporation have all assented to corporate action and no rights of the State or creditors intervene, the doctrine of estoppel is fully applicable and the plea of *ultra vires* is unavailing.

9. Stockholders who participate in and assent to acts of corporations will not afterwards be heard to complain of such acts but will be held estopped to question the validity of the proceedings.

10. The findings of a chancellor on the facts will not be disturbed by an appellate court unless such findings are clearly shown to be erroneous.     .

An appeal from the Circuit Court for Franklin County; C. L. Wilson, Judge.

Affirmed.

*Y. L. Watson, W. W. Henderson* and *Cooper, Cooper & Osborne,* for Appellants;

*W. J. Oven, Francis B. Carter* and *George H. Williams,* for Appellees.

WEST, J.—This cause is now presented upon appeal from the final decree in favor of defendants entered by the judge of the fourteenth judicial circuit. At the threshold we are confronted with a question of the jurisdiction of the court entering the decree from which the appeal was taken. The suit was filed in the circuit court of Franklin County, located within and forming a part of the second judicial circuit. On July 11, 1916, the judge, who was then and is now judge of that court, filed his certificate of disqualification in the cause as follows:

"I, E. C. Love, Judge of the Circuit Court, Second Judicial Circuit of the State of Florida, do hereby certify that I am disqualified to sit in the above stated cause for the reason that prior to my appointment to the bench I was counsel for one of the defendants in said cause."

Subsequently thereto the case was submitted to the judge of the fourteenth judicial circuit on demurrer of defendants to the bill of complaint. Upon this hearing there was an order sustaining the demurrer, from which order com-

plainants appealed, and upon consideration by this court the order was reversed. Sommers v. Apalachicola Northern R. R. Co., 75 Fla. 159, 78 South. Rep. 25.

Complainants thereafter applied for the appointment of a receiver for the properties involved in the litigation. This application was presented to the judge of the first judicial circuit and upon a hearing a receiver was appointed. From this order an appeal was taken to this court, upon the consideration of which the order was reversed. Apalachicola Northern R. R. Co. v. Sommers, 79 Fla. 816, 85 South. Rep. 361.

Thereafter evidence was taken, upon the completion of which notice was given by counsel for defendants to counsel representing complainants that defendants had set the cause down for final hearing on August 23, 1920, before the judge of the fourteenth judicial circuit in his office at Marianna, Florida. This hearing was postponed for two days by the judge and came on for hearing before said judge on August 25, 1920, at Marianna, at which time complainants appeared and filed a plea averring that the judge of the fourteenth judicial circuit was without jurisdiction to hear and determine the case.

The contentions upon this point generally are that a final hearing of the case on the merits by the judge of the fourteenth judicial circuit amounted to a transfer or change of venue of the cause from the second to the fourteenth judicial circuit; that there is no legal authority for such transfer in the absence of a petition of or agreement by the parties for such change, and therefore the judge of the fourteenth judicial circuit had no jurisdiction to hear and determinne the case.

Upon a hearing this plea was overruled and the final hearing was continued to be heard by the judge in his

office at Marianna on October 7, 1920, at which time the
cause was submitted on final hearing to said judge in his
office at Marianna.    On March 8, 1921, a final decree,
which, upon motion of counsel for defendants, was made
effective as of October 8, 1920, the day upon which the
cause was submitted, was entered in which it was adjudged
and decreed that the court had jurisdiction of the subject
matter and of the parties; that the equities of the cause
were with the defendants, and that the bill of complaint
and amended bill of complaint be dismissed at complain-
ants' cost.

The parties complainant and defendant have proceeded
throughout this litigation, until the case came on for final
hearing upon motion and notice to complainants by de-
fendants before the judge of the fourteenth judicial cir-
cuit, upon the theory that the certificate of disqualification
of the judge of the second judicial circuit is sufficient in
substance to show disqualification.   Both parties have so
construed the certificate in making applications to other
circuit judges for interlocutory orders in the case.   Neither
of them will now be permitted to question it but will be
held to have waived defects, if there are such, and upon
elementary principles of justice estopped from questioning
its sufficiency.   Finley v. Chamberlin, 46 Fla. 581, 35
South. Rep. 1; Warren v. Warren, 73 Fla. 764, 75 South.
Rep. 35.

The statute under which defendants proceeded is section
1481 of the General Statutes, which is as follows:

"1481.   (1078)   In case of inability and disqualification.
—Whenever the judge of any court, other than the su-
preme and criminal courts of record, shall be unable, from
absence, sickness or other cause, or shall be disqualified
from interest or any other cause, to discharge any duty

whatever appertaining to his office, which may be required to be performed in vacation or between terms, it shall be the duty of any other judge of a court of the same jurisdiction as the court in which the cause is pending, on the application of any party to perform such duties, and hear and determine all such matters as may be submitted to him; and such judge may discharge such duties either in his own or any other jurisdiction, and shall be substituted in all respects in the place instead, in the matter aforesaid, of the judge unable or disqualified to act.''

This statute limits the powers of the court acting in behalf of a judge who is disqualified to a discharge of duties "which may be required to be performed in vacation or between terms." But section 1859 of the General Statutes provides that "circuit courts, sitting in chancery, shall always be kept open for * * passing interlocutory and final decrees and orders" and that "all action in said matters in vacation shall have the same force and effect as if done in term time." Therefore, the limitation contained in section 1481 upon the powers of a court acting in behalf of a judge who is disqualified to a performanace of duties "which may be required to be performed in vacation or between terms" can have no application to circuit courts sitting in chancery for the reason that as to such courts there are, under the statute (sec. 1859) no such things as vacation and term time.

The constitution expressly provides for the trial and détermination of "civil cases at law" in which the judge of the court is disqualified. Any one of several courses may be pursued. Secs. 8 and 9, Art. V Const. of Fla.; Secs. 1470 and 1814, Gen. Stats. of Fla. It forbids the transfer of such cases from one court to another for trial except upon consent of the parties to the action. State

ex rel. Hughes v. Walker, 25 Fla. 561, 6 South. Rep. 169; State ex rel. Gaulden v. Wills, 75 Fla. 553, 78 South. Rep. 603. But it contains no inhibition against the discharge of duties in such cases ''which may be required to be performed in vacation or between terms'' by the judge of another court when the judge of the court in which the suit is pending is disqualified. State *ex rel.* Fla. Pub. Co. v. Hocker, 35 Fla. 19, 16 South. Rep. 614; Simonton v. State *ex rel.* Turman, 44 Fla. 289, 31 South. Rep. 821; Sewell v. Huffstetler, 83 Fla. 629, 93 South. Rep. 162.

With respect to chancery cases the situation is different. The constitution provides that the ''circuit courts and circuit judges may have such extra territorial jurisdiction in chancery cases as may be prescribed by law.'' Sec. 12, Art. XIX, Const. of Fla. Therefore, since, as we have seen, the expressions ''vacation'' and ''term time'' can have no application to ''circuit courts sitting in chancery'' and the constitution places no limitation upon the power of the legislature to confer upon ''circuit courts'' and ''circuit judges'' extra territorial jurisdiction, the conclusion would seem to be inevitable that section 1481 of the General Statutes of Florida was designed to and does confer upon a circuit court or a circuit judge acting for another such court or judge who is disqualified, power in ''chancery cases'' to ''hear and determine all such matters as may be submitted to him; and such judge may discharge such duties either in his own or any other jurisdiction, and shall be substituted in all respects in the place instead, in the matter aforesaid, of the judge unable or disqualified to act.'' This conclusion recognizes every applicable constitutional provision and gives effect to every pertinent statutory enactment. The expression contained in the statute, namely, ''which may be required to be performed in vacation or between terms,'' is applicable in ''civil cases at

law'' but in ''chancery cases'' it is inapplicable. A circuit judge acting in a ''chancery case'' in lieu of a disqualified circuit judge, does so by virtue of the extra territorial jurisdiction possessed by him under the constitution and the statutes. No change of venue is necessary in such a case.

It follows that the judge of the fourteenth judicial circuit had jurisdiction, ''upon the application of any party'' to this litigation, to hear and determine, ''in his own or any other jurisdiction,'' any question arising in the suit and presented to him and make any decree, interlocutory or final, incidental or necessary to a complete determination of every issue involved to the same extent as the judge of the second judicial circuit had but for his disqualification.

On the merits the assignments present the question of the propriety of the findings of the chancellor and the decree dismissing the bill of complaint. It is a stockholders' suit. The complainants are, or were at the time of the acts and transactions alleged in the bill to be fraudulent and unlawful, associated with defendants, or some of them, whose acts are challenged, as stockholders in the several corporations, the validity of whose proceedings is challenged. Neither the states from whom corporate franchises and powers were derived nor creditors of any of the corporation defendants question the validity of the various proceedings made the basis of complaint.

The allegations of the bill are set out in the opinion prepared when the case first appeared in this court. (Sommers v. A. N. R. R. Co., 75 Fla. 159, 78 South. Rep. 25). No benefit would result from a restatement of them here.

By answers all material allegations of the bill, in so far as they charge or impute fraud or misconduct to defendants in the various transactions recited, were denied. They aver that the defendant Florida Company, referred to as

the holding company, was organized pursuant to the contract of May 11, 1905, between complainant Duffy and defendants Whitaker and Company and Van Riper, by the terms of which the holding company was to become the owner of all the stocks and bonds of the railroad company and the land company which it, the holding company, should pledge to secure the repayment within three years of $1,500,000 borrowed by it for the purpose of building and equipping the railroad and paying for lands to, be purchased by the land company, and that in all respects said contract had been subsequently carried out as far as possible in accordance with its terms by defendants. They deny that the contracts of May 10 and 11, 1905, were prepared by defendant Wilfley and deny that complainant Sommers was misdescribed in said contracts as party of the second part, and aver that he was in fact a party of the second part and participated with defendants Whittaker and Van Riper in the commissions of second mortgage bonds received by them on account of their services in carrying out the contracts. They deny that the lands purchased were of the value of $6,000,000 and aver that the purchase price of such lands was $875,000. They deny that the right-of-way of the railroad company with the subsidy lands which it owned was of the value of $3,000,000 and aver that the right-of-way at the time the contracts were made had no value and that the subsidy referred to was worthless. They deny that the defendant Morey Engineering and Construction Company was owned, dominated and controlled by the defendants, or any of them, or that its affairs were mismanaged and its operations in the construction of the railroad so conducted as to make the cost of construction unreasonably excessive. They deny that they caused the defendant construction company to institute a suit against the railroad company to enforce a

lien for an alleged balance due upon its contract for the construction of the railroad or that such suit was collusive. They deny that the affairs of the railroad company or of the land company were mismanaged; deny that the land company, or any one for or on its behalf, refused to sell turpentine rights on its pine lands for the purpose of raising money that might have been available to liquidate its indebtedness; deny that moneys received from bonds of the Florida Company sold were improperly expended or squandered or wasted; deny that any of the acts or transactions of the corporation defendants, or any of them, were or are unlawful or *ultra vires,* or that they, or any of them, were prompted by any ulterior object or purpose as individual defendants, as officers or stockholders of such corporations; deny that defendants Whittaker and Company and Van Riper received $750,000 as provided in the contract of May 11, 1905, for negotiating the loan and securing funds for defendant companies and aver that of this amount $450,000 was given as a bonus in the form of non-interest-bearing bonds to purchasers of the first mortgage bonds of the Florida Company and the remaining $300,000 was represented by second mortgage bonds, the exact distribution of which is not stated but of which it is averred complainant David Sommers received $33,000; deny that there was any purpose or intent to injure or defraud complainants, or any of them, in the plan proposed and adopted for refinancing the enterprise when it became inevitable because funds originally obtained for this purpose were insufficient, and aver that in all the proceedings had or taken for the purpose of refinancing the enterprise complainants and each of them, either in person or by duly authorized representatives, either participated and acquiesced in or subsequently ratified, and never protested against or objected thereto until long after such plan

had been fully consummated. In detail and specifically each allegation or alleged wrong doing or improper conduct of individual defendants, or any two or more of them acting together, in the management of the affairs of the defendant corporations is denied, and generally there is a denial of any fraudulent purpose or intent in connection with the execution and carrying out of the contracts of May 10 and 11, and defendants aver that said contracts were made in good faith by all the parties thereto and with the expectation that through the exploitation of the railroad and the land companies with moneys agreed to be raised by defendants Whittaker and Company and Van Riper the railroad to be constructed and lands purchased would have a value that would justify not only the parties to the contract but the public and the purchasers of the bonds issued and sold by the holding company.

Such in substance is a condensed statement of the averments of the answers. The several answers cover many pages of the record. Issues of fact only are involved. Controlling legal principles are well established. A great volume of testimony was introduced on behalf of complainants and respondents. It is not difficult to trace the respective original interest of individual complainants from its origin to its extinguishment, or to its substitution accruing under the plan adopted for refinancing the enterprise, but it is not conceived that to do so would be of any benefit as a precedent since it deals with facts only which are peculiar to this case.

The railroad company, the St. Joseph Land and Development Company and the Florida Company, referred to as the holding company, were factors in a common enterprise. The original plan of financing the enterprise contemplated an expenditure of $1,500,000. As it progressed it soon became apparent that this amount was wholly in-

adequate, that the amount estimated was insufficient to meet the actual requirements. The purchase price of the lands was a little less than $900,000. The cost of construction and equipment of the railroad was more than $1,500,-000. The contract for the construction of the railroad was a cost-plus contract. It is alleged that the construction company was owned and controlled by certain of the individual defendants, and that the operations of this construction company were so conducted as that the expense of construction of the railroad was greatly in excess of what it should have been, and that this was a part of the scheme to defraud and wrest from complainants their stock and interest in the railroad and land companies; but such allegations are not proved.

It may have been, and no doubt was, unfortunate for complainants that the obligations of the holding company which were issued and sold to obtain funds to finance the enterprise matured within three years from the date of issue and the bonds of the railroad company and the land company which, together with the stocks of such companies, were assigned and transferred to the holding company as security for its bonds matured at a later date. But complainants are, and were at the time of the various transactions of which they now complain, *sui juris*. This arrangement was in accordance with the contracts of May 10 and 11, 1905. Evidence introduced for the purpose of showing that the execution of these contracts was fraudulently accomplished or that deception was practiced as an inducement to their execution is not conclusive. It is denied by defendants. The burden of proof is on complainants. Wilson v. Lott, 5 Fla. 305; White v. Walker, 5 Fla. 479; 12 R. C. L. p. 424. The fact alone that complainants made a hard bargain would not avoid the contracts. Mizell Live Stock Co. v. McCaskill Co., 59 Fla. 322, 51 South. Rep.

547; Florida Ass'n v. Stevens, 61 Fla. 598, 55 South. Rep. 981.

Nor can it be said that it appears from the record that in the process of refinancing the enterprise deception and fraud were employed by defendants in the various steps and transactions incident to it to the detriment of complainants. The chancellor held the opposite view and we cannot say that the finding is not supported by the evidence. On the contrary, it appears from the evidence that the participation and acquiescence of complainants as stockholders and officers in the proceedings of the corporation defendants in all their transactions were such as to estop them now from questioning their validity. In Perkins v. Trinity Realty Co., 69 N. J. Eq. 723, 61 Atl. Rep. 157, the court said: "To permit stockholders of corporations to unanimously make a disposition of the corporate property where no one else's rights are in any way prejudiced, and afterwards to repudiate their action upon the ground that it was beyond the power of the fictional body to do the act, could serve no useful purpose, and would be merely available in aid of fraud. To hold that, under such circumstances, those who have unanimously done the act cannot repudiate it, is certainly consonant with good morals and fair dealings, and violates no principle which is necessary to the protection of the rights of those concerned in and with corporations. In cases where stockholders have all assented to corporate action, and no rights of the state or creditors intervene, the doctrine of estoppel is fully applicable, and the plea of ultra vires is unavailing." The rule generally is that stockholders who participate in and assent to acts of corporations will not afterwards be heard to complain but will be held estopped to question the validity of the proceedings. Cook on Corporations (6th ed.), vol. 1, Sec. 39, vol. 2, Secs. 730, 735; Martin v. Niagara

Falls Paper Mfg. Co., 122 N. Y. 165, 25 N. E. Rep. 303; Babcock v. Farwell, 245 Ill. 14, 91 N. E. Rep. 683, 137 Am. St. Rep. 284; Jordan & Co. v. Collins & Co., 107 Ala. 572, 18 South. Rep. 137.

Tested by the foregoing legal principles and applying the familiar rule that the findings of a chancellor on the facts will not be disturbed by an appellate court unless such findings are clearly shown to be erroneous, the assignments on the merits have not been sustained. The decree will therefore be affirmed.

Affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J J., concur.