STATE, *ex rel* REMBRANDT CORP., v. ELWYN THOMAS, as Judge.

(Two Cases)

157 So. 337.
En Banc.
Opinion Filed October 30, 1934.

*Robert R. Milam,* for Petitioner;

*Cary D. Landis,* Attorney General, and *H. E. Carter* and *J. V. Keen,* for Respondent.

DAVIS, C. J.—Judge Elwyn Thomas, respondent, refuses to proceed in two cases presented before him styled as Rembrandt Corporation v. City of Sarasota, and Rembrandt Corporation v. Charles G. Stroheymer, as Tax Collector of Sarasota County. As a result these two original proceedings have been instituted in the Supreme Court praying that a peremptory writ of mandamus be awarded to compel respondent, as Circuit Judge, to assume and take jurisdiction of and proceed with the causes aforesaid pursuant to

an executive order of the Governor made under Chapter 16053, Acts 1933, Laws of Florida, and Section 8 of Article V of the State Constitution.

It appears by the record that the controversy arises as follows; Rembrandt Corporation sued in the Circuit Court of Sarasota County to enjoin the levy of back taxes on its property consisting of pictures and statuary in the Ringling Art Museum at Sarasota, Florida.

By the bills of complaint—one brought against the City of Sarasota and one brought against Sarasota County through its Tax Collector, it was alleged that the County Tax Assessor and the City Tax Assessor, acting in concert, have arbitrarily and unlawfully assessed and levied enormous tax levies against complainant's property for the years 1931, 1932 and 1933. The subject of the tax being an art museum collection, was claimed by complainant to be exempt from taxation because held and used for educational purposes. But assuming that the property is not wholly exempt from taxation the contention is also made in the alternative that the property is over assessed more than 3000% in comparison with other property of the same kind and character as customarily taxed by the city and county authorities.

Hon. Paul C. Albritton is the resident Judge of the Judicial Circuit of this State wherein Sarasota is situated. He is therefore the duly qualified presiding Circuit Judge in and for Sarasota County. On June 23, 1934, the complainant filed a suggestion of Judge Albritton's disqualification to act in the aforesaid pending tax cases. The suggestion filed was in substance as follows: That the said Paul C. Albritton, Judge of the Twenty-Seventh Judicial Circuit, was interested in the actual result of said suits and was disqualified to act as Chancellor therein; that the disqualifying

interest of said judge arises out of the following matters, that is to say—that the object of the suits being to have declared invalid tax assessments that had been made in large amounts against the property of complainant for the years 1930 to 1933, inclusive, in the county of said judge's residence, the effect of any decree adverse to complainant in the cause would be to materially lessen the taxes on the property of said Judge who is alleged and shown to be the owner of a large amount of taxable property situate in Sarasota County and in the City of Sarasota.

· Pursuant to the suggestion of disqualification so made, Judge Albritton entered the following order certifying his disqualification:

"CERTIFICATE AND ORDER OF DISQUALIFICATION

"THIS CAUSE coming on this day to be heard upon the suggestion and supplemental suggestions of the plaintiff as to the disqualification of the undersigned to sit as Judge in said cause and the matter after due notice having been submitted to the Court, and upon consideration thereof,

· "IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

"1. That the suggestions of the plaintiff are true.

"2. That the undersigned is disqualified by virtue of being a taxpayer in the city, county and school district in and throughout each of the years 1930 to 1934 inclusive.

"3. That the undersigned is disqualified to sit as Judge in this cause and so certified.

"DONE AND ORDERED in Chambers at Sarasota, Florida, this 18th day of July, A. D. 1934.

*(sgd) PAUL C. ALBRITTON,
"*Judge of said Court.*"

Whereupon the Governor of the State of Florida, acting under and by virtue of Chapter 16053, Acts 1933, and Section 8, Article V of the State Constitution, designated the respondent herein, Honorable Elwyn Thomas, Judge of the Twenty-First Judicial Circuit, to act for and instead of Judge Albritton. The Governor's executive order was as follows:

"It appearing from a copy of the order of disqualification of the Honorable Paul C. Albritton, Judge of the aforesaid court, to exercise jurisdiction of said cause, a copy of which order has been mailed to the Governor of the State of Florida, that said Judge is disqualified to hear and determine said cause, I, David Sholtz, as Governor of the State of Florida, by virtue of the power vested in me, do hereby designate the Honorable Elwyn Thomas, Judge of the Twenty-First Judicial Circuit of the State of Florida, to hear and determine the above entitled cause.

"IN TESTIMONY WHEREOF, I have hereunto set my hand and cause the Great Seal of the State of Florida to be affixed at Tallahassee, the Capital, this 7th day of August, A. D. 1934.

"(sgd)  DAVID  SHOLTZ,
*"Governor."*

As ground for his refusal to act pursuant to the designation of the Governor based upon Judge Albritton's order certifying to the resident Judge's disqualification, Judge Thomas, the respondent herein, returns as follows:

"That he declines to assume jurisdiction * * * solely for the reason that in his opinion it is not shown that the Judge of the Circuit Court for Sarasota County is disqualified, in view of a provision of Section 4153 of the Compiled General Laws of Florida (1927)."

Section 3 of Chapter 16053, Acts 1933, Section 4155 (2) C. G. L., 1934 Supplement, is as follows:

"Section 3. SUGGESTION OF DISQUALIFICATION; GROUND: PROCEEDINGS ON SUGGESTION AND EFFECT: In any cause in any of the courts of this State any party to said cause, or any person or corporation interested in the subject matter of such litigation, may at any time before final judgment, if the case be one at law, and at any time before final decree, if the case be one in chancery, show by a suggestion filed in the cause that the judge before whom the cause is pending, or some person related to said judge by consanguinity or affinity within the third degree is a party thereto, or is interested in the result thereof, or that said judge is related to an attorney or counsellor of record in said cause by consanguinity or affinity within the third degree, or that said judge is a material witness for or against one of the parties to said cause. Such suggestion shall be filed in the cause within thirty (30) days after the party filing the suggestion, or his attorney, or attorneys, of record, or either of whom, learned of such disqualification, otherwise the ground, or grounds of disqualification shall be taken and considered as waived. If the truth of any suggestion appear from the record in said cause, the said judge shall forthwith enter an order reciting the filing of the suggestion, the grounds of his disqualification, and declaring himself to be disqualified in said cause. If the truth of any such suggestion does not appear from the record in said cause, the judge may by order entered therein require the filing in the cause of affidavits touching the truth or falsity of such suggestion. If the judge shall find that the suggestion is true, he shall forthwith enter an order reciting the ground of his disqualification and declaring himself disqualified in the cause; if he find that the suggestion is false, he shall

forthwith enter his order so reciting and declaring himself to be qualified in the cause. Any such order declaring a judge to be disqualified shall not be subject to collateral attack, nor shall it be assignable as error and shall not be subject to review by the Supreme Court on writ of error, if the cause be one at law, or by appeal, if the cause be one in chancery. Any such order declaring a judge disqualified shall be assignable as error and shall be subject to review by the Supreme Court on writ of error, if the cause be one at law, and by appeal, if the cause be one in chancery, but such an order shall not be subject to collateral attack."

As will be noted from the section just quoted, an order by which a judge declares himself to be disqualified for any of the statutory causes is not subject to collateral attack. Nor is it assignable as error nor subject to review by the Supreme Court on writ of error, if the cause be one at law, or by appeal, if the cause be one in chancery.

The purpose of this section is to make an order of disqualification final and conclusive for all purposes, when entered by the affected judge himself, so that proceedings had therein and thereafter before a designated judge shall never be brought in question nor subject to challenge, either collaterally by the judge assigned to hear the cause in lieu of the disqualified judge, nor by collateral attack on such judge's authority to act on the basis of the recusant judge's order of disqualification upon which the designation of another judge is made, or on direct proceedings by appeal or writ of error sued out from any judgment, order or decree *entered in such cause by the substituted judge.*

We do not construe the statute, however, as undertaking to prohibit all legal test of the propriety of an order of disqualification claimed to have been erroneously or illegally

entered. The limitation is merely that a recusant judge's order certifying his own disqualification shall not be collaterally attacked by or before the substituted judge, or by means of an appeal or writ of error from any of the substituted judge's orders, decrees or decisions made on the strength of the presumptive validity of the order of disqualification entered by the judge in whose place and stead a substituted judge is required to act after being officially designated by executed order of the Governor for that purpose.

Had the parties, or either of them, in this case desired to test the propriety of the order of disqualification made by Judge Albritton, their remedy was to proceed by mandamus, directly against Judge Albritton to compel him to revoke his own order of disqualification and thereupon resume the exercise of his renounced jurisdiction.

Where a judge has decided that he is disqualified to hear a case, and has made an order refusing to hear the same on that account, mandamus is proper remedy to require him to hear it, if it be that he is not in law and in fact disqualified to do so. State v. Young, 31 Fla. 594, 12 Sou. Rep. 673, 19 L. R. A. 636, 34 Am. St. Rep. 41; State ex rel. Matheson & Co., v. King, 32 Fla. 416, 13 Sou. Rep. 891; State, ex rel. Sanchez v. Call, Circuit Judge, 36 Fla. 305, 18 Sou. Rep. 771; State ex rel. Birmingham Trust & Savings Co., v. Reeves, Circuit Judge, 44 Fla. 179, 32 Sou. Rep. 814; State, ex rel. Duke, v. Wills, Circuit Judge, 49 Fla. 380, 38 Sou. Rep. 289.

A judge is not permitted by law to refuse to exercise jurisdiction which he clearly possesses. So a judge's refusal to act on account of some supposed disqualification existing in his own mind is not conclusive. Hogan v. State, 89 Fla. 388, 104 Sou. Rep. 598. It may be tested by mandamus *against the judge who refuses to act*. And if the

refusal is found to be in law unjustified, an appropriate peremptory writ of mandamus to coerce judicial action will be awarded. State v. Young, *supra.*

In the case of State, *ex rel.* Melbourne State Bank, v. Wright, Circuit Judge, 107 Fla. 178, 145 Sou. Rep. 598, it was held that mandamus will always lie to compel a court or judge to vacate an order which it was entirely without any legal right to make where there is no review authorized therefor on writ of error or appeal.

The purpose of Chapter 16053, Acts 1933, in specifically cutting off all right to seek a direct review in the Supreme Court of an order of disqualification when attempted to be presented on a writ of error or appeal, and in specifically prohibiting all manner of collateral attacks otherwise attempted on orders of disqualification was obviously to invoke the rule of the case just cited by making it necessary for parties affected by orders of disqualification of judges to seek immediate review of such orders by means of a proceeding in mandamus *brought directly against the recusant judge* before any other judge designated as a substituted judge should undertake to act in his stead and thereupon proceed to the exercise of jurisdiction in the cause on the basis of the order of disqualification as made.

We hold therefore that where a Circuit Judge has duly entered in a pending cause an order of disqualification specifying therein a ground recognized by law as a lawful cause of disqualification, and no attack on the validity of such order of disqualification is made by mandamus brought directly against the recusant judge to compel him to vacate his own order of disqualification as being unauthorized under the law or facts of the situation upon which it is predicated, said order of disqualification becomes conclusive on all parties to the cause, and cannot be collaterally attacked

by such parties or by the judge duly designated by the Governor to act on authority of such duly entered order of disqualification. As a result of the foregoing rule, all proceedings had or jurisdiction exercised by a duly designated judge acting on the authority of an unrevoked order of disqualification and subsequent designation by the Governor of a substituted judge to act thereunder, will he held valid, binding and conclusive thereafter as against either collateral or direct attack by the parties or their privies.

To put the proposition differently, the effect of the 1933 statute is to limit attacks on order of disqualification by requiring a direct attack on a questioned order to be promptly made in mandamus proceeding brought against the *recusant* judge to compel him to vacate his own order if it was unauthorized to be made, and to preclude any other form of attack being made, directly or collaterally, by seeking to impeach the judicial acts of a substituted judge when made on the supposed authority of an order of disqualification. Therefore so long as an order of disqualification is allowed to stand unimpeached by means of direct proceedings brought to have the judge who made such order recall it and vacate it himself on some ground that would afford a basis for a mandamus against him to that end, the acts of a substituted judge made on the strength of it will be held valid.

This is so because any judge, whether qualified or disqualified to decide the merits of a particular case brought before him, nevertheless has sufficient jurisdiction under our statutes to permit him to make an order certifying to his own disqualification. Indeed, if a judge is in fact disqualified, an order certifying to his own disqualification is the only order he does have any jurisdiction to make.

Therefore it follows that where an order is made by a judge certifying to his own disqualification, it must be con-

strued as an order entered by such disqualified judge in the exercise of a special and limited statutory jurisdiction vested in him for that purpose. And, since no method of direct appellate review of such order is now permissible under Chapter 16053, *supra,* it follows that every order of disqualification, like any particularly restricted judicial order made in the exercise of a special and limited jurisdiction, is *sui generis,* and as such can be attacked only in a special and direct proceeding brought for that purpose *against the judge who made it.*

In other words, an order of disqualification is now conclusive until set aside in a proceeding brought directly against the judge who entered it, thus requiring the affected judge in every case to be made a party to any proceeding brought to attack and have vacated his official orders on the subject of his own disqualification.

The return is held insufficient and a peremptory writ of mandamus is awarded, no costs being allowed to relator against respondent.

WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.