STATE, *et al.*, v. COUNTY OF SARASOTA
Case No. 1.
(Road and Bridge Refunding Bonds

STATE, *et al.*, v. COUNTY OF SARASOTA
Case No. 2.
(Court House Refunding Bonds.)

159 So. 797.
Opinion Filed March 4, 1935.

630

*Henry L. Williford, James E. Kirk,* and *Forrest Chapman,* for Appellants;

*Winder H. Surrency,* for Appellee.

DAVIS, J.—Two appeals have brought up for review certain chancery decrees rendered by the Circuit Court of Sarasota County validating issues of refunding bonds proposed by Sarasota County. The proceedings and appeals are here under Sections 5106 C. G. S., 3296 R. G.. S. *et seq.* The Chancellor sustained the validity of the bonds in controversy. The State Attorney and certain intervenors have appealed from that decision. The cases were argued and submitted together and will therefore be discussed and disposed of in a single opinion. They have been heretofore considered by this Court upon appeals from earlier decrees, but upon such previous consideration the decrees appealed from were reversed by consent of appellants upon a confession of error. See State v. Sarasota County, 117 Fla. 34, 157 Sou. Rep. 21; State v. Sarasota County, 117 Fla. 36, 157 Sou. Rep. 22.

Prior to the entry of the earlier decrees, the Circuit Court had, by appropriate proceedings in accordance with the statute, admittedly acquired jurisdiction of the subject matter of the suit, namely the controversy concerning the validity *vel non* of the bonds. And by virtue of petitioner's compliance with the statute in the premises (Section 5107 C. G. L., 3297 R. G. S.) the political unit of Sarasota County, and the taxpayers and citizens thereof, also became bound by the proceedings and by whatsoever decree might lawfully be rendered therein concerning the particular proposed issues of bonds as to which they were given the right to be heard on the issues involved.

The appeal from the decrees first rendered and reversed on the prior appeals, therefore, brought to this Court all parties upon whom said decrees had become binding. This is so because the appeals were but a step in the ultimate decision of the pending controversy as appealed to the state's highest appellate court. Hence, upon reversal and remand of the proceedings first had, the causes became reinstated in the Circuit Court, not only upon a remittitur and mandate of the Supreme Court that expressly permitted the Circuit Court to so proceed with the cause anew by permitting such amendments to the proceedings as would make any decree of validation rendered by it one that would be consistent with the law as decided by this Court in contemporaneously decided cases, but under a mandatory direction in the mandate requiring the Circuit Court so to proceed.

Our statute pertaining to bond validation proceedings treats as parties defendant all of the citizens and taxpayers of the petitioning political unit bringing the proceedings. As such citizens and taxpayers the statute permits them to appeal from the decree as such. Such privilege of appeal exists, whether the particular individual so appealing has

actually appeared in, or exercised his statutory right of special intervention as a nominal party on the record, or not. See Sections 5107, 5108 C. G. L., 3297, 3298, R. G. S. On this point see also the discussion of Mr. Justice Ellis, in his separate opinion in Boatright v. City of Jacksonville, 117 Fla. 477, 158 Sou. Rep. 42 (text page 59) wherein the foregoing interpretation of the statute is emphasized with a statement of the reasons therefor.

So, as we have recently held in a similar case to this involving the validation of certain refunding bonds in Citrus County after reversal by this Court of an earlier decree with respect to the same bonds (State v. Citrus County, 117 Fla. 792, 158 Sou. Rep. 705, opinion filed January 1st, 1935), a Circuit Court's jurisdiction over citizens and taxpayers as defendants in a bond validation proceeding, when once lawfully acquired by a compliance with the statutory modes of obtaining such jurisdiction, is not thereafter to be considered lost until the proceedings are either abandoned or dismissed, or the cause has proceeded to a final adjudication on its merits and the decree thereafter made conclusive by lapse of time or affirmed or otherwise made conclusive on appeal.

The case of Jackson Lumber Co. v. Walton County, 95 Fla. 632, 116 Sou. Rep. 771, cited as authority to the contrary, is not in point here. In this case, the subsequent proceedings had in the lower court have been limited to the particular bonds heretofore brought in controversy in the Supreme Court on the previous appeal. By that appeal all citizens and taxpayers of Sarasota County became and continued bound as parties, when and after the cause was reversed and remanded to the Circuit Court for the purpose of having the proceedings so amended and therein revised as to conform to the appellate court's expressed opinion as

to the law of the case. That opinion required the deletion of certain features of the basic resolution found contrary to law, in order that a decree of validation of the bonds as so revised might be legally arrived at and entered by the Circuit Court in due course of procedure, without the necessity of instituting an entirely new bond proposal and validation proceeding thereon.

We therefore hold in this case that the procedure followed in the court below after remand of the causes for further consideration after reversal upon confession of error on the prior appeals, was in conformity with law and not invalid for want of jurisdiction as appellants now contend on the present appeals. And, insofar as such subsequent proceedings involved rulings that were discretionary with the Chancellor, such as the allowance or denial of further time for the filing of pleadings and the fixing of dates for further hearings, we find no such abuse of discretion as would be sufficient to requite reversals of the decrees on that score alone.

Whether or not the judge as a mere citizen and taxpayer of Sarasota County was thereby disqualified to entertain the proceedings and render the decrees that were entered herein, should have been directly tested by mandamus against the judge to compel him to enter of record the required statutory certification of his own alleged disqualification if he were disqualified on that ground, or by prohibition against such judge to restrain him from all attempted further proceedings in the cases as a supposedly qualified judge therein.

The statute of 1933 (Chapter 16053, Section 4155-2 C. G. L., 1934, Supplement) forbids collateral attacks and assignments of error on appeal that undertake to challenge the qualification of a judge who has affirmatively held himself

not disqualified and who, without the intervention of any direct attack on his right to further proceed with the cause to a final decree, has so proceeded and has duly entered a final decree in such cause. Only an order of disqualification duly entered, not an order refusing to approve a suggestion for disqualification in a cause, is now subject to being assigned as error and reviewed upon an appeal from that order or from the final decree in the cause. See State, *ex rel.* Rembrandt Corp., v. Thomas, Circuit Judge, 117 Fla. 127, 157 Sou. Rep. 337. Nor does it appear that the Circuit Judge is disqualified in the present case if such were not the rule. See State, *ex rel.* Elston Bank & Trust Co., v. Tedder, 118 Fla. 329, 159 Sou. Rep. 26.

We now pass to the merits of the decrees themselves. In this connection we are pleased to observe that the State Attorney of the Twenty-Seventh Judicial Circuit, with most commendable zeal, and with that praiseworthy devotion to the duty imposed upon him by the statute (Section 5107 C. G. L., 3297 R. G. S.) to defend against the improvident validation of possibly invalid proposed bonds, has raised on the record and personally argued before the Circuit Court and before this Court, every essential proposition of law or fact that the circumstances have suggested to him as an available defense against the granting of the petitioner's prayers for favorable decrees in the premises.

Under the statute just adverted to, it is the duty of a State Attorney upon whom process has been effectuated in a bond validation proceeding, to carefully examine the petition and, if it appears to him, or if he has any reason to believe that said petition is defective, insufficient or untrue, or if, in his opinion the issuance of the bonds in manner and form as proposed, is not legally authorized, to make such defense to the petition as to him shall seem proper

Acting pursuant to such statute, the State Attorney, together with certain intervenors in the present cases, has interposed and argued objections on the merits of the validity of the proposed bonds, which we may summarize as fcllows: (1) That it affirmatively appears that the issues of refunding bonds sought to be validated places an additional or increased burden upon the taxpayers of Sarasota County, without an election, in violation of Amended Section 6 of Article IX of the State Constitution; (2) That the provisions of resolution of the County Commissioners of Sarasota County for the issuance of said refunding bonds, the terms and conditions thereof, and the manner in which they are to be exchanged and the provisions for the payment thereof, either as originally adopted, or as subsequently amended pursuant to the holding of the Supreme Court, are beyond the scope of Chapter 15771, Acts 1931, commonly called the "General Refunding Act of 1931," and are therefore illegal, unreasonable, unjust, discriminatory, inequitable and such as ought not to be validated under the circumstances (3) that the said general refunding Act (Chapter 15772, *supra*) is itself unconstitutional as an unauthorized attempted delegation of legislative authority to the County Commissioners to determine under what circumstances and conditions refunding bonds may be issued by counties and other political subdivisions, whether a vote of the people be had thereon or not.

It is conceded in the present cases by all parties that there has been no approving vote of the freeholder electors of Sarasota County consenting to the issuance of the refunding bonds involved in this case. Hence their intrinsic validity or invalidity under Section 6 of Article IX of the State Constitution as amended in 1930, must stand or fall upon what has been held by this Court with respect to similarly

issued refunding bonds as set forth in the following recently decided cases: State v. Citrus County, 116 Fla. 676, 157 Sou. Rep. 4; Bay County v. State, 116 Fla. 656, 157 Sou. Rep. 1; State v. Sarasota County, 117 Fla. 34, 157 Sou. Rep. 21; State v. County of Citrus (Second Appeal), 117 Fla. 792, 158 Sou. Rep. 705 (Opinion filed January 1, 1935); Boatright v. City of Jacksonville, 117 Fla. 477, 158 Sou. Rep. 42.

All series of the proposed bonds are to bear date October 1, 1932, and are twenty-five year maturities. Interest for the first five years is at three per centum, for the next five at four per centum, for the next ten at five per centum and for the next five years, that is until maturity and thereafter, at five and one-half per centum per annum.

The bonds all are callable under the following prescribed conditions:

"The right of the county to select by lot and call and redeem this bond on any interest payment date on or prior to April 1, 1957, at par and accrued interest at the rate then prevailing as enforceable and collectible, is hereby reserved, and in the event of the exercise of such right, notice of such redemption shall be filed at the Central Hanover Bank and Trust Company, New York City, New York, at least thirty days prior to such redemption date, and shall be published at least thirty days prior to such redemption date, at least once in at least two newspapers of general circulation, one of which shall be printed and published in Sarasota County, Florida, and the other shall be published in the City of Chicago, Illinois, and said bond, when so called shall cease to bear interest on such redemption date. In the event said bond shall not have been called or redeemed prior thereto, payment will be made at maturity at par, accrued interest at the coupon rate and a reimbursement for any difference

between the coupon rate of the refunding bond and the coupon rate of the original indebtedness refunded hereby computed from the date of this bond to maturity, providing that in no event such reimbursement shall be in excess of ten per cent. of the principal amount of this bond."

Appellants argue that these quoted provisions of the contract render it illegal because, (a) in consequence of them the interest rate has been left open, uncertain and undetermined; (b) the General Refunding Act of 1931 does not authorize a contract to pay deferred interest; (c) the deferred interest clause is "unjust, unreasonable and discriminatory" in that it penalizes the county for meeting its engagements at maturity; (d) and that the provisions in question impose such a new or additional obligation upon the county as to require the proposed issues of bonds to be submitted to a vote of the electorate, since, with these provisions, the proposed obligations cannot be classified strictly as *refunding bonds*.

Section 4 of the 1931 General Refunding Act (Section 2385 C. G. L., 1934 Supplement) reads as follows:

"Any such unit may obligate itself to redeem any or all of the refunding bonds before maturity on such terms and conditions as the resolution authorizing such bonds may determine. Bonds subject to redemption shall state the manner of giving notice of intention to redeem (which may be by publication without actual notice) and when such notice has been given such bonds shall not bear interest after the date fixed in such notice of redemption, nor shall coupons maturing thereafter be valid, provided that adequate funds for their redemption shall have been provided and set aside by such unit."

The scheme evidenced by the refunding proposals and by the contract incipient therein, is that Sarasota County and

its bondholders will in the execution of the refunding plan, accomplish three objectives: (1) a long postponement of all maturities; (2) realize a substantial reduction in current interest required to be paid; (3) confer upon the County of Sarasota the legal right to anticipate its principal maturities by calling or buying them in out of a depressed market, in advance of actual maturity.

The refunding plan has been so constructed between the county and the refunding bond takers, that a former holder of any one of the bonds refunded who may accept in due course the county's offer to exchange his old bonds for some of the new, according to the proposed plan as intended and designed to become operative, will not thereby absolutely relinquish all claim to the aggravated differential in interest between the two classes of bonds, but will become vested under the terms of the refunding bonds with a contingent right to recoup, out of the aggregate difference in interest accruals computed at the formerly prevailing interest rates over the savings provided by the refunding bond scheme during the period it has been set up to run, not more than ten per cent. of the entire amount of the principal of the bond which is less than the totalized difference.*

The right of recoupment, as has been pointed out, is contingent only. It cannot attach during any of the time that the bonds are subject to call before maturity, as these proposed refunding bonds are. The right of recoupment, on the contrary, stands to be defeated either by: (a) purchase

---

*Most of the the refunded bonds were either six or five and one-half per cent. bonds  The new refunding bonds are provided to be issued at an interest rate beginning at 3% scale. The interest rate begins at 3% and may rise as high as 5½% during the life of the new bonds—a resulting saving in interest over the extended period of a considerable aggregate amount of money.

of the bonds by the county on the open market as contemplated by the plan; (b) by call and redemption according to lot; (c) by further refunding of the new bonds prior to April 1, 1957, a condition implied in the set-up.

Only in the event that none of these stated contingencies shall occur, is it to become an operative condition of the proposed refunding bonds that the reserved differential of ten per cent. out of what would otherwise be a total loss in interest for the life of the bonds as between the old interest rate and the new shall, on October 1, 1957 (the maturity date of the refunding bonds) become payable by recoupment for interest deferred and uncollected during the contract period.

It is a matter of common knowledge in financial circles that the value of an issue of public securities is depreciated, and their marketability impaired from an investment standpoint, by the incorporation therein of a provision making their stated maturities subject to being defeated in consequence of a reserved right to call and redeem such bonds, in advance of their stipulated maturities. Thus it is well recognized as a proposition of public financing that investors accustomed to putting their capital into long-term municipal bonds, avoid such bonds as are subject to call and redemption. In consequence of this tendency the ability of the buyer of such bonds to dispose of them is adversely affected and this in turn depreciates the yield of the bonds to the issuing authority, absent provision in such bonds for some compensating offset feature such as the recoupment of interest provision that was included in the refunding bonds here in controversy. What everybody knows the courts are permitted to judicially notice in connection with any subject brought before them to which the common knowledge re-

lates. St. Lucie County Bank & Trust Co. v. Aylin, 94 Fla. 528, 114 Sou. Rep. 438, first head note.

There is nothing illegal in provisions such as these when the object is to make proposed refunding bonds conform to sound financial practices and the rate of interest to be paid for the period contracted to be paid does not, when aggregated over the whole term exceed the statutory maximum rate of interest permitted to be agreed upon in refunding bonds when issued.

The fact that the basic resolution authorizing the issuance of refunding bonds pledges and orders to be set aside as a trust and sinking fund, for payment of said bonds, any unpaid taxes due or to become due, theretofore levied for the payment of the original indebtedness, and that when such taxes are collected they must be used only for payment of the refunding bonds, without affirmatively making such pledge subject to contract liens and prior obligations, as provided for by the 1931 General Refunding Act in Section 17 thereof, does not render the refunding bonds contrary to law. Every provision of the laws in force at the time such refunding bonds are provided to be issued, including the terms and conditions of the 1931 General Refunding Act itself, become a part of each bond when issued as much so as if specifically copied therein. Omissions in the bonds may therefore be supplemented by a reference to the statutes. The statutes thereupon being read as a part of the bonds as well as a part of the proceedings for their issuance, are to be deemed as controlling in the premises, whether affirmatively so expressed on the face of the proceedings or bonds or not, and provisions in the proceedings or in the bonds themselves must yield to the dominant requirements and limitations of the statute under which the bonds are authorized to be issued and are negotiated,

whether specified therein or not. State, *ex rel.* Keefe v. City of St. Petersburg, 106 Fla. 742, 144 Sou. Rep. 313, 671; 146 Sou. Rep. 175.

· The appellants have questioned the power of the County of Sarasota to refund $290,000.00 of its outstanding debt represented by two issues of Special Road and Bridge District Bonds floated at the time Sarasota County was a part of Manatee County, which the Act creating Sarasota County (Chapter 8515, Acts of 1921) required Sarasota County to assume and pay. We find that objection not well taken.

Refunding bonds issued to refund outstanding Road and Bridge District bonds, the payment of which bonds was by special legislative authority, provided to be assumed by a county upon its creation (and prior to the ratification of the 1930 amendment to Section 6, Article IX, of the Constitution) are authorized to be floated in like manner and on the same conditions as are bonds to refund general county bonds directly issued by it under the General Laws of the State for building hard-surfaced roads. This is so notwithstanding the fact that no election has been called or held in the county to provide for approving same in accordance with amended Section 6 of Article IX of the Constitution aforesaid. The constitutional section just cited does not prohibit the orderly refunding as county bonds, of special local or district bonds that by a valid statutory assumption of payment of same have, in legal contemplation, become county wide obligations of the assuming county in substance, although continued as local or district obligations in form. Compare: Nolle v. Broward County, 100 Fla. 1692, 131 Sou. Rep. 776, with State v. City of Miami, 103 Fla. 54, 137 Sou. Rep. 261, and State v. City of Miami, 101 Fla. 292, 134 Sou. Rep. 608.

Appellants' objection that this entire county refunding

bond plan and operation is being carried out by the Board of County Commissioners of Sarasota County pursuant to a collateral, but entirely disconnected refunding bond contract entered into between the county and a "Refunding Agency," does not tend to establish the invalidity of the proposed refunding bonds. This is especially true where it clearly appears as it does in this case that whatever the legal effect of the challenged contract may be, it is neither intended to be made a part of, nor contemplated to enter into and become condition of, the county's proposed obligation toward the holders of its refunding bonds, but is to be confined entirely to the subsequent setting up of some convenient arrangement between the county commissioners and said "Refunding Agency" by which the refunding bonds, when and after being validated and issued, can be disposed of by the county through the medium of said "Refunding Agency" by an exchange or other trade with the holders of old bonds that the new bonds were issued to refund. Such "Refunding Agency" contract, if invalid, unfair or fraudulent toward the county and its taxpayers as here charged, should be directly attacked in appropriate proceedings. It is not subject to being challenged collaterally in a statutory proceedings for the validation of refunding bonds as to which the questioned contract with such "Refunding Agency" is to become no part of the proposed obligation of the refunding bonds nor incorporated into any purported evidence of the same.

Collateral attacks not germane to the main inquiry, when attempted to be interjected in a statutory bond validation proceeding, are properly dismissed from consideration, leaving the determination of same to a proper forum in an appropriate direct proceeding wherein all interested and affected parties may be heard. See Volusia County v. State,

98 Fla. 1166, 125 Sou. Rep. 375; West v. Town of Lake Placid, 97 Fla. 127, 120 Sou. Rep. 361; City of Fort Myers v. State, 95 Fla. 704, 117 Sou. Rep. 97.

Appellants next object that Chapter 15772, Acts of 1931, upon which these refunding bonds are predicated as to their authorization and validity, is unconstitutional and void as an unwarranted delegation of unlimited discretion to the county commissioners to issue refunding bonds. The argument is that said Chapter is violative of those constitutional provisions which prohibit the delegation of legislative powers to county officers to incur county liabilities of a character and amount not limited by law.

No authorities are cited to support this objection, but a complete answer to the objection in its entirety is to be found in the principles stated in the case of Getzen v. Sumter County, 89 Fla. 45, 103 Sou. Rep. 104.

We find Chapter 15772, *supra,* to be sufficiently definite and certain in its limitations, and not void as an unauthorized delegation of legislative power to the county commissioners as suggested in the motion below to dismiss which was denied.

Finally it is objected by appellants that the bonds herein are not true refunding bonds in that they unconstitutionally enlarge the obligation of the original bonds without a vote of the freeholders. This, they say, is in violation of amended Section 6 of Article IX of the State Constitution.

When these cases were here before it was conceded on a confession of error filed at that time by appellees, that the bonds as then proposed to be issued and held by the lower court to be valid, were susceptible to the objections raised and sustained by this Court with regard to the Citrus County and Bay County Refunding bond issues. After the prior decrees of validation had been reversed pursuant to such

confession of errors and the causes remanded to the Circuit Court for further proceedings to make the proceedings and proposed refunding bonds conform to the law of the case as fixed in our previous decisions (State v. Sarasota County, 117 Fla. 34-36, 157 Sou. Rep. 21, 22), the Chancellor entertained and proceeded to hear and determine anew the question of the validity of the proposed bonds as reflected by the supplemental petitions filed in the pending causes to show that all of the illegal provisions heretofore found to exist in the resolution and bonds as proposed, had been by the county commissioners of Sarasota County reconsidered, recalled and deleted from the proposals and contemplated issues of refunding bonds. The Chancellor's determination on the issue thus raised was favorable to the validity of the bonds and upon that determination the decrees now before this court on the appeals in these cases were rendered.

Insofar as the decision of the Chancellor was to the effect that the authorizing resolutions and proposed issues of bonds have been now brought into conformity with the decisions and mandates of this Court on the previous appeals, it appears to be amply supported by the record and our conclusion in regard thereto must be in harmony with what was decided on that question by the Circuit Court.

On the question whether or not the proposed refunding bonds can be lawfully exchanged for bonds and coupons held by the Clerk of the Circuit Court under Acts of the Legislature which permitted him to receive and hold bonds of the refunded issues as payments of delinquent taxes, we express no opinion at this time. The question suggested is a collateral one, the decision of which should be left to be arrived at in some appropriate proceedings brought to have bonds held by the Clerk surrendered up and cancelled as re-

tired, if in contemplation of law such bonds are no longer in force and effect as evidences of indebtedness. Certainly the county should not be handicapped by being refused the right to have refunding bonds validated that are admittedly not affected by the bonds held by the Clerk of the Circuit Court nor should the county be denied its right to anticipate an exchange with such Clerk by providing refunding bonds to meet such an exchange should an exchange be adjudicated in appropriate proceedings to be lawful.

Other questions raised on the record and argued against the validity of the two proposed issues of bonds but not herein specifically discussed, have been considered and determined adversely to appellants. We find neither of the approved issues of refunding bonds here brought in controversy to be invalid for any of the causes or reasons assigned or argued and therefore affirm the decrees appealed from with costs to be taxed against Sarasota County.

It is therefore considered, adjudged and decreed by this Court that the several validation decrees as to the following issues of bonds, to-wit: Series "A" Court House Refunding Bonds, aggregating $52,000.00, and Series "B" Court House Refunding Bonds aggregating $458,671.68, and Series "A" Road and Bridge Refunding Bonds aggregating $3,289,665.00 and Series "B" Road and Bridge Refundings Bonds, aggregating $1,205,230.00, in manner and form as appealed from, be and the same are hereby severally affirmed, and that separate and several mandates in conformity with the judgments of this Court in these cases do issue within ten days as provided for by Section 5108, C. G. L., Chapter 11854, Acts 1927, in the event no petition for rehearing has been filed within that period.

Affirmed as to Case No. 1.

Affirmed as to Case No. 2.

648

Whitfield, C. J., and Ellis, Terrell, Brown and Buford, J. J., concur.