### MEREDITH et al. v. CITY OF WINTER HAVEN et al.

No. 10402.

Circuit Court of Appeals, Fifth Circuit.

March 10, 1944.

Rehearing Denied April 22, 1944.

See 141 F.2d 1019.

D. C. Hull, Erskine W. Landis, John L. Graham, and J. Compton French, all of DeLand, Fla., for appellants.

Giles J. Patterson, of Jacksonville, Fla., and Harry E. King, of Winter Haven, Fla., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The petition, seeking a declaratory judgment and injunction touching the call for payment before maturity of refunding bonds of City of Winter Haven issued in 1933, in which call no provision is made for paying one-half of deferred interest as promised in the bonds, was dismissed because stating no claim on which relief can be granted. On appeal to this Court the questions involved were found to be purely of State law, on which the Florida decisions were confused, and it was held that the petitioners should seek relief in the State courts. Meredith et al. v. City of Winter Haven, 5 Cir., 134 F.2d 202. The Supreme Court held we should decide the questions. 320 U.S. 228, 64 S.Ct. 7. We now undertake to do so.

The original bonds drew 5½ and 6% interest and were not callable. There were in 1933 large defaults in interest and principal, but some bonds still had many years to run. The bonds now in controversy were issued and validated without a popular election and exchanged for the former obligations par for par, but with maturities varying from 1948 to 1963, and with reduced rates of annual interest for ten years, but the aggregate difference was put into a final coupon for "deferred interest", to be paid at maturity of the bond, if the bond were not earlier called and paid. The holder of a new bond was thus to get at last principal and interest at the old rate, unless the bond was called. But there was provision for calling them for payment on any interest date, interest to be paid to that date at the coupon rate, plus one-half the deferred interest for ten years represented by the deferred interest coupon if the call was on or prior to April 1, 1943, or plus three-fourths the deferred interest if the call was between April 1, 1943, and April 1, 1953, or plus the full deferred interest if the call was between April 1, 1953, and April 1, 1963. The call here involved was for Oct. 1, 1941, and it is proposed to pay only the reduced coupon interest, without paying one-half the deferred interest

as promised. The City contends that the promise to pay deferred interest is contrary to the Florida Constitution, Art. IX, Sect. 6, because no election was held to authorize the promise, but that it is severable, not affecting the validity of the bonds otherwise. The bondholders contend that the promise is a part of the call provision and not severable, and entirely valid, because the bonds are refunding bonds in that they put no additional burden on the City, and thus need no election. This is the first question.

The second question arises on the resolution of the City Commission made July 24, 1933, which authorized the refunding bonds and is referred to in them, and which provided in Section 20: "That if any clause, section, paragraph or provision of this resolution or of the General Refunding Bonds hereby authorized be declared unenforceable by any court of final jurisdiction, it shall not affect or invalidate the remainder thereof; and if any of the bonds hereby authorized be adjudged illegal or unenforceable in whole or in part, the holders shall be entitled to assume the position of holders of a like amount of the indebtedness hereby provided to be refunded and as such enforce their claims for payment." The bondholders say that if the promise to pay one-half the deferred interest on this call is illegal or unenforceable, they may collect that much interest under the old bonds, by virtue of the quoted resolution.

Prior to Nov. 4, 1930, municipal bonds in Florida required only to be authorized by the Legislature. On that date Art. IX, Sect. 6, of the Constitution was so amended as to require an election, but the provision was not to "apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties, Districts or Municipalities." The question as to what bonds required no election at once arose. In State of Florida v. City of Miami, 100 Fla. 1388, 131 So. 143, it was held that the bonds meant were not only refunds of refunding bonds, but all refunding bonds "when * * * issued * * * merely to extend the time for the payment". In Sullivan v. Tampa, 101 Fla. 298, 299, 134 So. 211, the court held that the bonds proposed to be issued were constitutional refunding bonds though bearing a higher rate of interest than the old bonds and though authorized to be sold at 95. Both these things of course would increase the burden on the municipality. The following year, 1931, the Legislature passed the general refunding Act which authorized interest up to 6% and sale at not less than 95. Chapter 15772, Acts of 1931, F.S.A. § 132.01 et seq. This Act has not been held unconstitutional, and under it the bonds in controversy were issued. The Sullivan case said the new bonds must be "exclusively for * * * refunding the bonds or interest thereon" in order to be refunding bonds. This was reiterated in State v. Dade County, 107 Fla. 93, 98, 144 So. 356. In Bay County v. State, 116 Fla. 656, 157 So. 1, it was said there could be no enlargement of the debt and that additional security for the bonds could not be added without a vote. In State v. Sarasota County, 118 Fla. 629, 159 So. 797, old bonds bearing 5½ and 6% were refunded with lessened interest, but with a provision that if they were not called or redeemed by a certain date, the full former interest was to be paid. This was held good, as the aggregate over the term did not exceed the original interest. The introduction of provisions for call before maturity were recognized as favorable to the municipality and not objectionable. These decisions are consistent and understandable, and would seem generally favorable to refunding operations.

In 1939 was decided. Outman v. Cone, 141 Fla. 196, 192 So. 611, in which the issue of bonds with lowered interest, but with a promise as here to pay deferred interest if called before maturity, was enjoined. No authority was cited, and no previous decision overruled, but because the resolution authorizing the bonds was ambiguous and might be construed as requiring the payment on call of more interest than the old bonds would have drawn, and because the cost of refunding would also add a burden, elements "materially different from the old" contract were thought to be imported and to require an election. In Taylor v. Williams, 142 Fla. 402, 195 So. 175, additional security without an authorizing election was again condemned, but the provision touching the new security was alone enjoined, it being held severable. In State v. Pinellas County, 143 Fla. 557, 197 So. 127, where a first refund had included deferred interest coupons like those here involved, and a second refund ignored them, it seems to be held that the second refund could proceed, on the assumption that the deferred interest coupons were invalid. In State v. Fort Meyers, 145 Fla. 135, 198 So. 814, bonds which were refunded at a lower rate but on default reverted to the old higher rate were upheld, and it was held

that the refunding agent's commission, if not included in the refund, was not unlawful, but payment out of the bond money ought to be enjoined.

While the present case was pending in the district court there was decided the case of Andrews v. Winter Haven, 148 Fla. 144, 3 So.2d 805, which the City relies on as determining this case. The Andrews case seems to hold, on the authority of Outman v. Cone, and Taylor v. Williams, supra, that the deferred interest coupons are void and unenforceable, but may be severed from other provisions of the bonds, which may be called without reference to and without paying any part of the deferred interest coupons. The Andrews case is cited in State v. New Smyrna Beach, 148 Fla. 482, 4 So.2d 660, but in that case it seems that the decree validating bonds which carried deferred interest coupons was affirmed.

■ Aside from the Andrews case we find no settled constitutional law established in Florida which would . condemn these bonds as not being refunding bonds, or which would invalidate the postponement of payment of part of the old interest rate by the plan of deferred interest coupons, because on the whole the time of payment of principal and interest has merely been enlarged without increasing the burden of the debt. The old bonds bore interest at their contract rate after maturity until finally paid. Jefferson County v. Lewis, 20 Fla. 980, 1009. The coupons in default also drew interest at the legal rate, which was higher. Jefferson County v. Hawkins, 23 Fla. 223, 2 So. 362. These new bonds eased the pressure without increasing the principal or the rate of interest. The call provisions were for the benefit of the City, as the Florida Court declares it will judicially notice in State v. Sarasota County, 118 Fla. 629, 159 So. 797, for which some consideration must be usually extended in order to secure its acceptance. The consideration here was recognition of a part of the deferred interest which the old bonds would have drawn. Even after paying the consideration there is profit in the present call. Only in case a call had been made early in the first period, say in 1935, would there be a loss, and of course the City would not make such a call unless by a saving in interest rates on new bonds it would be made more than whole. The creditor had no right to force a call at any time. The payment of part of the deferred interest being plainly the consideration for the bondholders' agreeing to the call provision, we do not see how the one can be severed from the other, so as to sustain the call before maturity without paying the agreed part of the deferred interest.

■ We are not sure that the Andrews case requires us to hold otherwise. It was a "made case", that is, the parties were cooperating to secure a decision in the City's favor, according to the allegations of this petition as amended. But there was no corrupt collusion, and certainly no deceit of the Supreme Court. Its decision must be taken as deliberate. It is not res judicata here, for the parties are not the same. It is much weakened as authority, because the cause of complaint presented there differs much from that in this case. Andrews sued on a contract of the City with himself and others as refunding agents to bring about the refunding, which was made several months before the refunding resolution of July 24, 1933, involved here as a part of the present bondholders' contract. Andrews did not bring that resolution into his case at all. Such expensive contracts with refunding agents, if made a part of the refunding itself, may add to the debt burden so as to defeat the refunding, as some of the cases above cited show. They have been held invalid in some instances. We invalidated one in Bradford County v. Nuveen, 5 Cir., 133 F.2d 169. Andrews contributed to his defeat by resting his case on this agency contract. In the case before us we know of the agency contract only through the Andrews case, and it appears to be separate from the refunding resolution. If invalid, it ought not to affect these bonds. If this expense was in some way taken out of bond money, it possibly ought to be restored, but this does not appear. We are not satisfied that the Andrews case controls this one.

■ But if it does, it does not cover the second question, because Section 20 of the refunding resolution was not in the record of the Andrews case. If the Andrews case requires us to hold that the part of the call provision which requires one-half the deferred interest to be paid is separable and unenforceable, then the bonds are "adjudged illegal and unenforceable * * * in part", and the holders are "entitled to assume the position of holders of a like amount of the indebtedness provided to be refunded and as such enforce their

claim for payment." This seems to us to be a contract right, and both just and equitable. It will sustain a claim not exceeding the amount that would be due on an old bond at its rate of interest up to the date of call, less interest payments made. The interest due on an old bond would be more than is here claimed, because under the new bond only one-half the deferred interest is payable, and nearly all would have been earned in October, 1941. But the claim ought not to be enlarged. The contract provision was made not to enrich the bondholder in case of partial invalidity of his bond, but only to indemnify and make him whole.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed.