Gerald A. Lewis Comptroller Tallahassee
QUESTIONS:
1. In January 1975, did Leon County, a noncharter county, have the authority to create, by county ordinance, Falls Chase Special Taxing District with an independent governing body and budget under ss. 125.01(5)(a) and 165.041(2), F. S.?
2. Does a noncharter county have the authority to create, by county ordinance, a special taxing district with an independent governing body and budget under ss. 125.01(5)(a) and 165.041(2), F. S.?
3. What is the scope of authority of the Division of Securities under Ch. 517, F. S., to review the status of bonds issued by special districts which were subject to bond validation proceedings in circuit court, in light of s. 75.09, F. S.?
SUMMARY:
The fiscal duties of the Department of Banking and Finance under part III of Ch. 218, F. S., do not require or authorize that department to determine the validity of a special district or the validity of any ordinance of a board of county commissioners creating a special district. The Falls Chase Special Taxing District has been the subject of a bond validation proceeding pursuant to s. 75.09, F. S., from which no appeal was taken, wherein the validity of that district was put in repose. County ordinances are entitled to a presumption of validity. Bonds issued by a special district (which falls within the definition of `political subdivision' in s. 1.01(9), F. S.) are exempted from registration under part I of Ch. 517, F. S., although a `dealer' or `salesman' falling within the definitions of those terms in part I of Ch. 517 must register with the Department of Banking and Finance even though he is selling or dealing in such exempt securities.
AS TO QUESTIONS 1 and 2:
As your first two questions raise essentially the same issues, for the purpose of this opinion, they will be considered and answered together.
The portion of Ch. 218, F. S., which is pertinent to your questions is part III (the `Uniform Local Government Financial Management and Reporting Act'). Under part III of Ch. 218, the duties and authority of the Department of Banking and Finance are specific and limited. In examining the provisions of part III, I have found no language which, on its face, requires or authorizes the department to inquire into or make any official determination of the constitutional or statutory validity of any special district or to construe the constitutional or statutory powers of a board of county commissioners.
Section 218.32, F. S., requires that every unit of local government submit an annual financial report. Section 218.31(1), F. S., defines `unit of local government' as meaning `a county, municipality, or special district.' If a special district falls within the definition of `[d]ependent special district' set forth in s. 218.31(6), F. S., then, under Ch. 3D-140.02(2), F.A.C. (Rules of the Department of Banking and Finance), that district's financial statement is to be `included as a part of the financial statement of the local governing authority and shall be audited in conjunction with the audit of the local governing authority.' (Emphasis supplied.) Section 218.3(6), F. S., defines a dependent special district as `a special district whose governing head is the local governing authority ex officio, or otherwise, or whose budget is established by the local government authority.' (Emphasis supplied.) `Local governing authority' is defined by s.218.31(3), F. S., as `the governing body of a unit of localgeneral purpose government.' (Emphasis supplied.) `Unit of local general purpose government' is defined by s. 218.31(2), F. S., as `a county or a municipality established by general or special law.' However, if the district in question is an independent
special district (as defined in Ch. 218), then the district, and not the local governing authority, is responsible for submitting the annual financial statement to the Department of Banking and Finance. Chapter 3D-140.03(4), F.A.C., requires independent special districts to `[p]repare and submit complete annual financial statements for examination by the [district's] auditor.' And, Ch. 3D-140.03(6), F.A.C., requires that the financial statement specified in Ch. 3D-140.03(4) be filed by the independent special district with the Department of Banking and Finance. Section 218.31(7), F. S., defines `[i]ndependent special district' as:
 . . . a special district whose governing head is an independent body, either appointed or elected, and whose budget is established independently of the local governing authority, even though there may be appropriation of funds generally available to a local governing authority involved. (Emphasis supplied.)
Cf., s. 218.34(4), F. S., providing that `[t]he local governing authority may, in its discretion, review and approve the budget or tax levy of any special district located solely within its boundaries.' While it is apparent that the Department of Banking and Finance must determine, according to the statutory definitions referred to above, whether a special district's own governing head or that of the local governing authority (i.e., the county) is responsible for submitting the required annual financial statement, it is not apparent to me, nor do I find any clear implication, that the Department of Banking and Finance may go beyond such a determination and inquire into the authority of any local governing authority to create either an independent or dependent special district. And, as I have already observed, there is no express authorization in Ch. 218, F. S., for the department to so inquire into or construe the powers of a duly elected board of county commissioners or the validity of a special district created by ordinance of a county pursuant to general law. In order to fulfill its statutory obligations under Ch. 218, it appears that the department need only determine the composition of the `governing head' of the district and the method by which its budget is established so as to apply the statutory definitions cited above. Upon making such determinations based on the statutory definitions, the department can then make a proper determination as to where responsibility rests for submitting the annual financial statement. The rulemaking authority given to the department by s. 218.33(2), F. S., similarly fails, either expressly or by necessary implication, to provide any authority to the department to enact rules other than those `reasonable rules and regulations regarding uniform accounting practices and procedures by units of local government.' It is fundamental that administrative agencies, including the Department of Banking and Finance, have only such powers and authority as have been granted by express or necessarily implied statutory authority, and that, where there is doubt regarding the lawful existence of a power being exercised by an administrative agency, such doubt should be resolved against the further exercise of such power. Edgerton v. International Company, 89 So.2d 488, 490 (Fla. 1956); State exrel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628,636 (1 D.C.A. Fla., 1974); cert. dismissed, 300 So.2d 900 (Fla. 1974); City of Cape Coral v. GAC Utilities, Inc., of Florida,281 So.2d 493, 495 (Fla. 1973); Division of Family Services v. State,319 So.2d 72, 76 (1 D.C.A. Fla., 1975); Florida State University v. Jenkins, 323 So.2d 597, 598 (1 D.C.A. Fla., 1975); Williams v. Florida Real Estate Commission, 232 So.2d 239, 240 (4 D.C.A. Fla., 1970). And, in order for an administrative agency to proceed under implied — rather than express — powers, there must first clearly exist some express duty or power from which the implied power is to be derived. Molwin Inv. Co. v. Turner, 167 So. 33 (Fla. 1936). I would also note that, since certain duties and powers have been clearly and expressly imposed on or granted to the department by part III of Ch. 218, F. S., it should be inferred that no other powers or duties are contemplated by part III. Thayer v. State,335 So.2d 815, 817 (Fla. 1976); Dobbs v. Sea Isle Hotel,56 So.2d 341, 342 (Fla. 1952).
Also, any duly enacted ordinance of a county is entitled to a presumption of validity until the courts — not this office or any other agency of the executive branch — rule otherwise. See Union Trust Co. v. Lucas, 125 So.2d 582, 587 (2 D.C.A. Fla., 1960); City of Miami V. Kayfetz, 92 So.2d 798, 801 (Fla. 1957); State v. Ehinger, 46 So.2d 601, 602 (Fla. 1950). These cases affirm the presumption of validity to which municipal ordinances are entitled, but were all decided prior to municipal home rule and therefore are equally applicable to the construction of the ordinances of a present-day noncharter county. See also, Rose v. Town of Hillsboro Beach, 216 So.2d 528 (4 D.C.A. Fla., 1968), stating that ordinances are subject to the same rules of construction as are statutes. A fundamental rule of statutory construction is that of a statute's entitlement to a presumption of validity. Shevin v. Metz Construction Co., Inc., 285 So.2d 598
(Fla. 1973).
Moreover, Ch. 75, F. S., provides for judicial validation of bond issues such as the one about which you have inquired. Not only does the decree in such a proceeding validate the bonds, but it also `may include the validation of the county, municipality, taxing district, political district, subdivision, agency, instrumentality or other public body itself.' The bonds in question were the subject of such a proceeding in circuit court and one of the findings of the court set forth in the final judgment (from which no appeal was taken) was that the Falls Chase Special Taxing District `is a legally organized and existing special taxing district within the meaning of Chapter 165 and 125, Florida Statutes . . . .' And, the final order stated, inter alia, that `[t]he Charter of the District is valid and in compliance with the laws of the State of Florida.' The conclusiveness of the decree in such a bond validation proceeding as to future challenges to the validity of the issue is emphasized by the language of the statute and by a long line of judicial decisions construing the statutes providing for validation proceedings. Section 75.09, F. S., provides:
 If the judgment validates such bonds, certificates or other obligations, which may include the validation of the county, municipality, taxing district, political district, subdivision, agency, instrumentality or other public body itself and any taxes, assessments or revenues affected, and no appeal is taken within the time prescribed, or if taken and the judgment is affirmed, such judgment is forever conclusive as to all matters adjudicated against plaintiff and all parties affected thereby, including all property owners, taxpayers and citizens of the plaintiff, and all others having or claiming any right, title or interest in property to be affected by the issuance of said bonds, certificates or other obligations, or to be affected in any way thereby, and the validity of said bonds, certificates or other obligations or of any taxes, assessments or revenue pledged for the payment thereof, or of the proceedings authorizing the issuance thereof, including any remedies provided for their collection, shall never be called in question in any court by any person or party.
In Thompson v. Town of Frostproof, 103 So. 118, 119 (Fla. 1925), the court stated that `the purpose of a decree validating and confirming bonds . . . is to put in repose any question of law or fact that may be subsequently raised affecting the validity of such bonds.' It has also been stated that:
 Such validation proceedings involve a determination not only of the authority of an agency or governmental unit to issue bonds or revenue certificates, but also whether the issuing authority may lawfully expend the proceeds of the bond issue for the contemplated purpose. [Crowe v. City of Jacksonville Beach, 167 So.2d 753, 755 (1 D.C.A. Fla., 1964)]
In accord: Lipford v. Harris, 212 So.2d 766, 768 (Fla. 1968); Wright v. City of Anna Maria, 34 So.2d 737, 739 (Fla. 1948); Stateex rel. Harrington v. City of Pompano, 188 So. 610, 626 (Fla. 1938). I would also note the duties of the state attorney in a bond validation proceeding under s. 75.09, F. S. Section 75.05, F. S., requires that notice of a proceeding under s. 75.09, F. S., be served on the state attorney for the judicial circuit in which the district in question lies, and requires that `if in the opinion of the state attorney, the issuance of the bonds or certificates in question has not been duly authorized, defense shall be made by said state attorney.' And, in State v. Sarasota County,159 So. 797, 800 (Fla. 1935), the court emphasized this duty of the state attorney, stating:
 [I]t is the duty of a state attorney upon whom process has been effectuated in a bond validation proceeding, to carefully examine the petition and, if it appears to him, or if he has any reason to believe that said petition is defective, insufficient, or untrue or if in his opinion the issuance of the bonds in manner and form as proposed, is not legally authorized, to make such defense to the petition as to him shall seem proper.
Therefore, it would be inappropriate for me to comment upon the validity of the Leon County ordinance creating the Falls Chase Special Taxing District or to make any official comment upon the validity of the Falls Chase Special Taxing District itself, when that special district's validity has been expressly adjudicated in a bond validation proceeding pursuant to s. 75.09, F. S. The foregoing comments should also illustrate why I deem it to be both unnecessary and inappropriate at this time for me to address your second, hypothetical question. To do so would require me to indirectly comment upon the validity of the Falls Chase Special Taxing District.
AS TO QUESTION 3:
Your third question relates to the powers of the Division of Securities of the Department of Banking and Finance under part I of Ch. 517, F. S. (the `Sale of Securities Law'). While, as I have explained above in detail, a bond validation proceeding under Ch. 75, F. S., puts questions regarding the validity of the bonds `in repose,' this question may be answered simply by reference to the various provisions in part I of Ch. 517 which establish the scope of the division's jurisdiction under that part, as to both the type of securities and classes of persons and entities subject to regulation. The introductory paragraph and subsection (1) of s. 517.05, F. S., provide:
 Except as otherwise expressly provided, the provisions of this part shall not apply to any of the following classes of securities:
 (1) Any security issued or guaranteed by the United States or any territory or insular possession thereof, by the District of Columbia, or by any state of the United States or political subdivision or agency thereof. (Emphasis supplied.)
In the absence of any definition of `political subdivision' in and for the purposes of part I of Ch. 517, I must turn to the definition of political subdivision provided in s. 1.01(9), F. S.:
 The words `public body,' `body politic' or `political subdivision' include counties, cities, towns, villages, special tax school districts, special road and bridge districts, bridge districts and all other districts in this state. (Emphasis supplied.)
The Legislature has instructed that the definitions provided in s.1.01(9), F. S., are to be used `[i]n construing these statutes and each and every word, phrase, or part hereof, where the context will permit.' I would note that the phrase, `[e]xcept as otherwise provided,' at the beginning of s. 517.05, F. S., appears to refer to s. 517.12(1), F. S., which provides that a `dealer' or `salesman' (as those terms are defined in s. 517.02(4) and (6), F. S.), must register with the Department of Banking and Finance even if he is selling securities which, like those of a special district, qualify as exempt securities under s. 517.05, supra.(See also, Ch. 78-435, Laws of Florida, amending or repealing various sections of Ch. 517, F. S., which take effect November 1, 1978.)
Prepared by: Jerald S. Price, Assistant Attorney General