BARKDULL, Judge.
The defendants/appellants, Javier Reyes and Jorge Reyes (brothers), appeal their convictions and sentences after a jury trial.
Javier and Jorge, along with Xavier Archie, were charged with first-degree murder, trafficking in cocaine, armed robbery and armed kidnapping. Archie made a deal with the state in which he agreed to plead guilty and testify against the Reyes brothers, who were tried together. Javier and Jorge were found guilty of killing Colombian drug dealer Guillermo Ayerbe in the course of a “drug rip-off.” It is undisputed that neither Javier nor Jorge fired the shot which killed Ayerbe. The state sought to establish the guilt of Javier and Jorge through the doctrine of felony murder pursuant to Section 782.04, Florida Statutes (1987).
Prior to trial, the defense moved in li-mine to prevent the state from eliciting any testimony concerning collateral offenses allegedly committed by Jorge (aka Ray Gonzalez) in California. The state agreed that it would not elicit such testimony and the motion in limine was granted.
In the early stages of the trial, counsel for Jorge noted that the State had scheduled two California officers to testify and that the officers had come in contact with Jorge as a result of a pending California case. The defense again moved in li-mine to prevent the state from eliciting any testimony concerning the pending California case. The trial court was advised by the state, that the California officers had been instructed not to discuss how they came into contact with Jorge.
Notwithstanding the Order suppressing such testimony, one of the California officers stated the following:
Q. [by prosecutor]: How was it that you were — on November of 1987, how was it that you were able to recall a conversation that took place in July between yourself and this fellow known to you as Ray Gonzalez?
A. Working patrol like I normally do, I usually end up handling people who are victims, and here I am handling someone who is a suspect on a crime in California in our case.
Jorge’s counsel objected and moved for a mistrial. Defense counsel argued that the error could not be alleviated by a curative instruction. The objection was sustained, the Motion for Mistrial was denied and the defense counsel was directed to devise a curative instruction, which follows:
THE COURT: Let me advise the Members of the Jury that you are not to construe any testimony that you just heard to suggest that Jorge Reyes was arrested or under investigation for [a] matter in California.
During the charge conference, the defense counsel for Javier indicated he wanted an “independent act” instruction, but that he didn’t have one to suggest. The following day defense counsel presented three instructions on independent act. The state argued that the “as a consequence of” issue was adequately covered by the principal instruction and the felony murder instruction, and that this case was devoid of any evidence of withdrawal from the underlying felony. The trial court pointed out that at the very least, Javier acted as a lookout and protector during the underlying felonies and received payment for his participation. The trial court refused to give any of the proposed instructions on the independent act doctrine, but did offer to give the state’s suggested instruction, i.e., the felony murder instruction, if the defense wished it to. The defense never made such a request.
The jury returned verdicts of guilty on all counts as charged. Subsequently, at a post trial hearing, the state agreed that absent expert testimony concerning the nature and weight of the cocaine, counts I *934 and II should be reduced to attempted trafficking, rather than trafficking. The state also agreed that there was no evidence that Javier actually possessed a gun and therefore, the firearm could not be used for minimum mandatory or enhancement purposes. However, the written judgments of conviction were not changed accordingly, and Javier Reyes’ judgment of conviction for kidnapping, was enhanced to a life felony, based on his possession of a firearm and the kidnapping conviction was scored as a life felony on the guidelines score-sheet. This appeal follows.
The appellants urge that the trial court erred in denying the requests of both, that the jury be instructed on the law of independent acts. The testimony of code-fendant, Xavier Archie, provided a factual basis for the defense of independent acts, in that the evidence presented does support the reasonable hypothesis that Ayerbe was killed by a gun shot that was fired while both Reyes were doing nothing more than standing outside the house where he was killed, that the trial court erred in denying the Motion for Mistrial made by counsel for Jorge where a police officer testified that Jorge was a suspect in another case in California, at the time he was being questioned about crimes with which he was charged in the instant case, that the trial court erred in reclassifying Javier’s conviction for kidnapping, from a first degree felony to a life felony, where it was undisputed that Javier did not have a weapon or firearm in his personal possession, and that the written Judgments for trafficking in cocaine as to both defendants must be corrected to reflect the trial court’s oral reduction of the convictions to attempted trafficking in cocaine.
We find no error in denying the mistrial, State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Gonzalez v. State, 511 So.2d 703 (Fla. 3d DCA 1987)[1] or in refusing the independent act instruction.[2] Parker v. State, 458 So.2d 750 (Fla.1984); Compare Goodwin v. State, 405 So.2d 170 (Fla.1981). The court takes judicial notice[3] of the fact that in the Greater Miami area “drug ripoffs” are common place and usually involve violence with a firearm resulting in death or injury.
Therefore, the verdicts are affirmed. The judgment of convictions are affirmed, except as to the convictions for trafficking and the enhancement of the kidnapping to a life felony. The case is returned to the trial court for readjudication and sentencing as to attempted trafficking and kidnapping.
Affirmed in part, reversed in part, with directions.

. Prior to the volunteer answer by the California officer, the evidence was received without objection, that the California officer's job was patrol, and that he had been assigned to Inmate Reception Center, interviewing incoming Spanish speaking inmates.

. The evidence was that the Reyes were specifically to protect Archie who was making the "rip-off”. Testimony to this effect from Archie reads in part as follows:
“Q. Who gave the instructions to Javier Reyes?
A. Jorge.
Q. What instructions did he give him?
A. For him to wait next to a tree.
Q. And do what?
A. Just wait there.
Q. And what was he supposed to do after he waited there?
A. As soon as I would go in with the customer, or something happens with the customer, they were going to protect me, because they were coming with more people. They came with more people.
******
Q. And the reason that Javier was outside of the house was he was going to protect you in case anything went wrong; is that right?
A. That’s right. That is how Jorge had planned it.”

. See Libtz v. Coleman, 149 Fla. 28, 5 So.2d 60 (1941); State v. County of Sarasota, 118 Fla. 629, 159 So. 797 (1935); Layne v. The Tribune Company, 108 Fla. 177, 146 So. 234 (1933); Section § 90.202(11) Florida Statutes (1989).